GARDNER ET AL. *v.* NEWBERT ET AL.

[No. 10,529.   Filed November 17, 1920.]

1.  TRADE UNIONS.—*Expulsion of Members.—Reinstatement.—Property Rights Involved.—Jurisdiction.—Courts.*—The courts have jurisdiction to protect a member of an incorporated or unincorporated trade union from unlawful or arbitrary suspension or expulsion and to compel reinstatement, providing property rights involved.   p. 191.

2.  TRADE UNIONS.—*Property Rights.—Benefits.—Process.*—The rights of members of a local lodge of a trade union, which is possessed of property worth $4,000, held in trust for its members, and who are entitled to death and disability benefits, are property rights which would be lost in case of suspension or expulsion, and are such vested rights that they cannot be disturbed without charges and due trial.   p. 191.

3.  TRADE UNIONS.— *Suspension of Local Lodge.— Notice and Hearing.—Rights of Members.—Resort to Courts.*—The attempted suspension of a local lodge by international officers of a trade union, without notice to its members or any opportunity to them to be heard, was, as to such members, void, and, as their legal status was not changed, they were not required to prosecute any appeal within the order before resorting to the courts for relief from such suspension, which, if effective, necessarily deprived them of their standing and property rights in the order.   p. 192.

4.  JUDGMENTS.—*Motions to Modify.—Office.*—The office of a motion to modify a judgment is not to totally destroy the judgment if sustained but to so correct the judgment as to make it in harmony with the finding, and it cannot be made to perform the office of a motion for new trial.   p. 192.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by Harry R. Newbert and others against George Gardner and others.   From a judgment for the plaintiffs, the defendants appeal.   *Affirmed.*

*L. V. Cravens, Ibach, Gavit & Stinson, T. C. Klotz* and *McAleer, Dorsey & Gillett,* for appellants.

*William J. Whinery,* for appellees.

NICHOLS, J.—This action was by appellees against appellants to enjoin them from interfering with appel-

lees in the exercise of certain alleged rights as members of the local lodge known as Lakeside Lodge No. 39 of the International Brotherhood of Boiler Makers and Iron Ship Builders and Helpers of America, and for other relief as appears by the complaint, the substance of which is hereinafter set out. Demurrer to the complaint was overruled, and the appellants, electing to stand upon the ruling of the court, declined to plead further, and judgment was rendered against them, from which this appeal is prosecuted.

The errors relied upon for reversal are the action of the court in overruling appellant's motion to modify the judgment, and the court's action in overruling a separate and several demurrer of appellants to the complaint. Such complaint is very long, covering about forty-five printed pages of appellant's brief. The substance of so much of it as is necessary for this opinion is as follows: Appellees are each members in good standing of Lakeside Lodge No. 39 of the International Brotherhood of Boiler Makers and Iron Ship Builders and Helpers of America, a voluntary association organized for the mutual protection of the trades of steam boiler makers and iron ship builders and to protect the wage workers, and institute better conditions among their fellow craftsmen who belong to the order. The International Brotherhood was organized in the city of Chicago, Illinois, October 1, 1880, consisting at that time of nine lodges. On September 1, 1893, it was consolidated with the National Brotherhood, a like voluntary organization, and has ever since acted as such voluntary association for the purposes hereinbefore set out. Said International Brotherhood on August 13, 1890, granted a charter to said Lakeside Lodge No. 39 for the organization of a subordinate lodge in South Chicago, Illinois, to be known as a subordinate lodge under the name of the Lakeside Lodge No. 39. Said Lodge No.

39 has continued as such local subordinate lodge to this date. At the time of its organization said lodge was given exclusive jurisdiction over a large part of Cook county, Illinois, and exclusive jurisdiction over all contract work in Lake county, Indiana. The headquarters of said lodge were in South Chicago until September 19, 1917, when, by resolution of the Supreme International Lodge in convention assembled, its place of meeting was changed from South Chicago, Illinois, to Whiting, Indiana, and it was given exclusive jurisdiction only of Lake county, Indiana. Thereupon it was moved to Whiting, Indiana. It has a membership comprised of appellees consisting of 243 members. The International Brotherhood is now comprised of more than 600 local lodges, of which said Lodge No. 39 is one. The government of said lodges is vested in the Supreme International Lodge, which said lodge has full jurisdiction over all subordinate lodges and is the highest tribunal of the brotherhood. The charter of said local lodge was reissued to it October 11, 1909, and is now in full force, and has never been revoked or recalled by said International Lodge, and said local lodge still has complete jurisdiction as a member of the International Brotherhood over Lake county, Indiana. The executive and judicial powers only of the International Lodge, while not in session, are vested in an International Executive Council of the brotherhood, which consists of an international president, assistant president and all of the international vice-presidents. Such executive council has among its powers supervision over the order when the International Lodge is not in session. It has power to pass on any subject, proposition, or grievance, and to hear and determine all cases of appeals from the decisions and rulings of the subordinate lodges and international president's decision, and to hear and determine all charges against any subordinate lodge or against any

officer of the International Lodge, and all decisions of council are final unless appeal is made to the International Lodge convention.

The constitution of the brotherhood provides for the payment of death benefits to all members who are now and have been in good standing continuously as follows: If in good standing for at least one year, $50; two years' continuous good standing, $100; three years' continuous good standing, $150; four years' continuous good standing, $200; five years' continuous good standing, $250. There is a provision that all members who join before they are fifty years of age may be exempt from dues upon proper application after they are sixty years of age. There is a further provision for disability benefit in the case of certain accidents.

The constitution provides that every member shall be entitled to a fair trial for every offense involving a fine, reprimand, or suspension, and that no member shall be placed on trial unless charges specifying the offense signed by a member in good standing have been submitted to the lodge in writing, and a copy of the same has been furnished the accused member so as to advise him of the nature thereof and enable him to prepare defense. The funds and property of the subordinate lodges are trust funds for the benefit of its members and shall not be divided in any manner among the members of the lodge. Upon surrendering the charter, all funds must be forwarded to the international secretary-treasurer, fifty per cent. of the same to be placed to the credit of such lodge should it ever be reorganized at that point, and fifty per cent. to be placed to the credit of the general fund. Whenever a subordinate lodge, from any cause, lapses or surrenders its charter, or is expelled, the officers must forward the seal, charter, supplies and funds to the international secretary-treasurer.

Appellees say that they each and all of them are now and have for many years last past been members in good standing of said International Brotherhood and in said Lakeside Lodge No. 39, a subordinate lodge of said brotherhood, and that ten of the appellees, naming them, were charter members of said Lodge No. 39 and have ever since continued in good standing. On April 18, 1918, one of appellees received from appellant Louis Weyand, acting international president, the following telegram:

> "We have come to the conclusion that the officers and members of lodge thirty-nine no intention of complying with the orders of the convention or executive council therefore you will hereby officially notified that the charter of Lodge thirty-nine stands revoked upon receipt of this notice any due stamps placed on members due books· after April 19, 1918, will not be recognized. By the officers and lodges of the International Brotherhood you are ordered to notify all members of Lodge thirty-nine of this notice failure on your part will be cause for placing responsibility on you at some. future time we are asking special service on this message you ordered further to return charter to Room One Law Building, Kansas City, Kansas.
>
> Louis Weyand,
> Acting President."

Since receiving said telegram appellants Weyand, Atkinson, Nolan, Flynn, Sheehan, Dowd, Merrigan, McCutcheon, Ryan, Schmitt, comprising the International Executive Council of said Brotherhood, have refused to recognize appellees or any one of them as members of said brotherhood, and have refused to recognize said local lodge as a subordinate lodge thereof, and have refused to receive any communication from appellees, notwithstanding the fact that each and all of said appellees were during all of said time in good standing, and have at all times complied with the rules, regulations, constitution and by-laws of said brotherhood and of said

subordinate Lodge No. 39, and notwithstanding the further fact that the officers of said lodge have in all respects complied with the rules, regulations, constitution and by-laws of said brotherhood.

Appellees further say that the telegram was sent by said appellant Weyand without authority, and without any hearing or trial, and without any chance to be heard, and without any notice or any charges of any kind whatsoever having been filed against appellees or any of them, or against said Lodge No. 39, notwithstanding the constitution and by-laws of the brotherhood required that every member of said brotherhood shall be entitled to a fair trial for every offense charged against him, and that no member of said brotherhood shall be placed on trial unless charges specifying the offense, if any, committed by him, and signed by a member of said brotherhood in good standing have been submitted to the lodge of said brotherhood in writing, and a copy of the charges has also been furnished to the accused member so as to advise him of the nature thereof, and to enable him to prepare his defense thereto, and that such charges when preferred shall be referred to a trial committee of three members, and that such member shall be tried by such trial committee, and that such accused member shall have the right to be represented by counsel who is a member of the brotherhood.

Appellees have repeatedly requested, demanded and entreated appellants to hear appellees and to give them a fair and impartial trial in accordance with the constitution and by-laws of the brotherhood and have so entreated appellants Weyand and Atkinson as acting international president and assistant international president, respectively, to grant said lodge a hearing and fair and impartial trial, but that such request has been refused and that appellees' request of said appel-

lant Weyand for an appeal has also been refused, which appeal is guaranteed to them by the constitution and by-laws of the brotherhood. Appellees have continued to pay their dues to said subordinate lodge No. 39 in accordance with the constitution and by-laws of the brotherhood and of the local lodge and to hold their meetings in accordance with such constitution and by-laws, but appellants have refused to furnish appellees or said lodge any supplies whatsoever when requested so to do, with a tender of the proper amount in payment of such supplies.

Appellants, as a part of their scheme to unlawfully and arbitrarily excommunicate appellees from the brotherhood, have attempted the organization of another lodge in said Lake county, known as local lodge No. 39, which is now purporting to hold meetings of such other lodge from time to time in the city of Hammond, Lake county, Indiana, under said name of Local Lodge No. 39, and purporting to be the local lodge of said brotherhood, notwithstanding the complete jurisdiction of Lake county is given to said Lakeside Lodge No. 39. Appellees say that such attempt by appellants is illegal and void and contrary to the rights and privileges of said appellees and of said lodge. Appellees say that the acts of appellants are a part of a scheme to prevent appellees from enjoying the benefits and privileges of the brotherhood, and to prevent them from receiving death and disability benefits and other benefits incident to membership in said brotherhood as hereinbefore set out, and to prevent them from entering the employment of persons employing union labor on the ground that the appellees have been excommunicated from the brotherhood and that they are in danger of losing their employment where they are now employed, and of being prevented from securing other employment.

Appellees had no notice or knowledge of the wrong-

ful intention of appellant Weyand and his coappellants to attempt to excommunicate appellees from said brotherhood until the receipt of the telegram hereinbefore set out. No notice or any hearing of any kind or character had been given them, and appellants, unless restrained, will deprive appellees of their said property rights in said brotherhood without due process of law.

Said Lakeside Lodge has a large amount of personal property of the value of $4,000, which is the joint property of appellees held by said subordinate lodge and the officers thereof in trust for apellees, in which appellees are jointly interested, and on said April 18, 1918, without notice as aforesaid, said appellant Weyand and his coappellants of the International Executive Council actuated by malice, as appellees believe, and by a determination to deprive appellees of the powers invested in them by their charter and to acquire and take possession of said personal property and funds, attempted to revoke the charter in the manner hereinbefore set out, which was illegal and unjust. Appellees say the act of appellant Weyand in attempting to revoke said lodge's charter was not the exercise of a discretion pertaining to the subjects of the brotherhood or in carrying out its purposes, but were a usurpation of power by said Weyand and his coappellants in an endeavor to oppress unjustly and illegally appellees, and deprive them of the benefits of said brotherhood. There is a prayer for a mandatory injunction enjoining the further interference with appellees' rights as members of the brotherhood and mandating them to restore appellees and each of them to their rightful and proper place in said brotherhood, the same as they existed before the time of sending said telegram.

The complaint states a cause of action, and the demurrer thereto was properly overruled.

It has been repeatedly held that courts have jurisdic-

tion to protect a member from unlawful or arbitrary suspension or expulsion, or of proceedings to

1. compel reinstatement to membership with all the rights and privileges thereunto belonging to a member who has been unlawfully suspended or expelled, providing property rights are involved. Martin, Modern Law of Labor Unions §313. *Froelich* v. *Musicians, etc., Assn.* (1902), 93 Mo. App. 383; *Otto* v. *Journeymen, etc., Union* (1888), 75 Cal. 308, 17 Pac. 117, 7 Am. St. 156.

This doctrine applies with equal force to unincorporated unions and to those which are incorporated. Martin, Modern Law of Labor Unions §313; *Lysaght* v. *St. Louis, etc., Assn.* (1893), 55 Mo. App. 538; *Weiss* v. *Musical, etc., Union* (1899), 189 Pa. 446, 42 Atl. 118, 69 Am. St. 820.

It is averred in the complaint that Lakeside Lodge No. 39 is possessed of property of the value of about $4,000, which it holds in trust for appellees, and

2. of which appellants seek to deprive appellees, and that there is a provision in the constitution and by-laws of the brotherhood that entitles members in good standing to death benefits and disability benefits. These are property rights which must be lost to the member in event of suspension or expulsion from the order, and they are such vested rights as cannot be disturbed without charges and due trial. *Neal* v. *Hutcheson* (1916), 160 N. Y. Supp. 1007; *Mesisco* v. *Giuliano* (1906), 190 Mass. 352, 76 N. E. 907; *Holmes* v. *Brown* (1917), 146 Ga. 402, 91 S. E. 408; *Froelich* v. *Musicians, etc., Assn., supra.*

Such a rule of law must certainly prevail when it is contended, as in this case by appellees, that all of the members were in good standing and have at all times complied with the rules, regulations, constitution and by-laws of the brotherhood, and of their subordinate

lodge, and that the officers of such subordinate lodge have in all respects complied with the rules, regulations, constitution and by-laws of the brotherhood.

It is averred in the complaint that the appellees had no notice whatever of the intended suspension of their lodge and of its members until the receipt of the telegram above set out from the acting international president. It has been repeatedly held that the expulsion or suspension of a member from a fraternal benefit association without notice or opportunity to be heard is void. The suspension being void, appellees' legal status was not changed, and they were not required to prosecute an appeal within the order before resorting to the courts for relief. *Fales* v. *Musicians', etc., Union* (1917), 40 R. I. 34, 99 Atl. 823; *Holmes* v. *Brown, supra; Hall* v. *Supreme Lodge, etc.* (1885), 24 Fed. 450; *Pratt* v. *Amalgamated Assn., etc.* (1917), 50 Utah 472, 167 Pac. 830. In the case at bar the attempted suspension was of a local lodge, but such suspension, if effective, of necessity deprived appellees of their standing and benefits and property rights in the order. In the case of *Kehoe* v. *Leonard* (1917), 176 App. Div. 626, 163 N. Y. Supp. 357, it was held that a local union could not be suspended and its members deprived of their standing and rights to sick, death and strike benefits with all other membership rights, through the fiat of the acting general president. This case is directly in point as applied to the facts in the case at bar. An instructive case note is also found in *Engel* v. *Walsh* (1913), 45 L. R. A. (N. S.) 353. See Martin, Modern Law of Labor Unions §313 *et seq.* for further discussion of the principles involved in this case.

The motion to modify the judgment was properly overruled. Had it been sustained, the effect would 4. have been to totally destroy the judgment as rendered. This is not the office of a motion to mod-

ify, but its office is to so correct the judgment as to make it in harmony with the finding of the court. Appellants seek to make their motion perform the office of a motion for a new trial. This it cannot do. *Hannah v. Dorrell* (1881), 73 Ind. 465; *Strange, Admr., v. Tyler* (1883), 95 Ind. 396; *Dorsey v. Dorsey* (1902), 29 Ind. App. 248, 63 N. E. 475; *Southern Surety Co. v. State, ex rel.* (1920), *ante* 31, 128 N. E. 622.

Judgment is affirmed.