## GRAHAM, ADMINISTRATRIX, *v.* PLOTNER.

[No. 12,144. Filed May 13, 1926. Rehearing denied March 31, 1927. Transfer denied May 29, 1928.]

*Rhodes & Rhodes,* for appellant.

*Albert H. Cole, Guy R. York* and *Alton E. Rees,* for appellee.

NICHOLS, C. J.—This is an action by appellant against appellee, to recover certain Liberty bonds in the total principal sum of $7,850, and treasury notes in the total principal sum of $3,300, alleged to have been the property of William Fisher in his lifetime, and now to be a part of his estate, and which it is alleged appellee is asserting to have possession of, and is claiming as owner, charging that appellee is an intermeddler, and has in his possession the keys to a safety deposit box in the First National Bank of Peru, Indiana, where said bonds and treasury notes were placed for safekeeping during the lifetime of the decedent, which safety deposit box was rented and used by both the decedent and appellee. Appellant asks for the return of said property, and that she also recover judgment against appellee for the value of such property as he may convert to his own use and for ten per cent. damages. The complaint, in one paragraph, was under the intermeddling statute, to which appellee filed an answer in general denial.

Appellant requested the court to call a jury to try the cause, to which appellee objected, which objection was sustained, and the court overruled appellant's request, whereupon the cause was submitted to the court for trial, and the court made a finding of facts, in substance, that William Fisher died November 7, 1923, intestate, and left as his sole and only heirs at law appellant, a niece, who has been appointed administratrix, a nephew,

and other heirs, descendants of deceased brothers and sisters.

Fisher never married and, for many years prior and down to January 4, 1912, lived and made his home with appellant and had accumulated about $8,700 which he had and owned at that time, and which was on deposit in the First National Bank, of Peru, Indiana, and represented by a certificate of deposit issued to him. He also had and owned at that time the undivided one-half of 220 acres of land and a life estate in 120 acres, in Miami county.

The decedent and a brother, Conrad Fisher, were neither ever married, and lived together with their father and mother on a tract of land containing seventy-eight and one-half acres in Miami county until the death of their father, after which appellant and her family moved into said home, and continued to live therein, until July, 1910, when Conrad died. The husband of appellant was appointed administrator of the estate of Conrad Fisher, deceased, and, as such, allowed and paid to appellant for care of said Conrad Fisher the sum of $7,643.74.

After the death of said Conrad on July 28, 1910, said William Fisher continued to reside with the appellant a portion of the time until January 4, 1912, at or about which time they and some members of her family had some misunderstanding, and by reason thereof, he left the home of appellant, walked a distance of approximately two miles to the home of appellee and asked permission to stay at his home, which request was granted, and said decedent continued to reside at the home of appellee and his wife until his death, November 7, 1923, at which time said decedent was ninety-one years old.

During the time he resided in the home of appellee

and wife, they boarded, cared for, nurtured, and gave him their personal care and attention, nursed him through sickness, furnished him with a comfortable home, cared for him in his last sickness, and caused him to be properly buried. He paid no fixed sum to said appellee for such board and care, although he did some light work and chores. He lived in appellee's home as a member of his family and enjoyed its comforts. After he left the home of the appellant, he never thereafter visited in her home, and she never thereafter visited him, or spoke to him.

On August 1, 1910, he conveyed to appellant's husband, for $1, 120 acres of real estate, reserving a life estate therein, and, on the same date, by his separate deed, he conveyed to said husband, for $1, his undivided interest in the seventy-eight and one-half-acre tract upon which he and the Grahams and Conrad Fisher had been and were residing. Subsequent thereto, he purchased of his nephews two other undivided interests in and to said tract, and died the owner of them. Appellant and her children have, since the death of said Conrad Fisher, continued to reside upon said tract, during all of which time the decedent received no rents and profits therefrom.

He sold certain real estate during the time he lived in the home of appellee, in all 120 acres, for $5,400, to appellee, and another tract for $1,700 to Earl Plotner.

At the date of the death of said decedent, he was the owner in fee simple of ninety-three acres of real estate, and an undivided interest in the seventy-eight and one-half-acre tract upon which appellant resides, and a note of Harlan Plotner for $3,500.

On March 15, 1918, said decedent and appellee rented of the First National Bank, of Peru, Indiana, a lock box in its safety deposit vault jointly, to which box each had access until the death of said decedent, after which it

contained Liberty loan bonds and treasury certificates as follows: $2,300 of treasury certificates in an envelope marked W. A. Plotner, $1,800 of these certificates were bought and paid for by said decedent, and $500 by appellee; treasury notes of the par value of $1,000 in an envelope with the name of "W. A. Plotner" indorsed thereon, $800 of these treasury certificates were bought and paid for by said decedent and $200 thereof were bought and paid for by appellee; Fourth Liberty Loan bonds of $650 par value in the envelope with the $1,000 par value treasury notes hereinbefore described, purchased and paid for by appellee and his wife and belonging to them; Third four and one-fourth Liberty bonds, $5,000 par value, in an envelope with the name of "W. A. Plotner" written thereon, bought and paid for by said decedent; Fourth four and one-fourth Liberty Loan bonds of $2,200 par value, in the envelope with the Third four and one-fourth Liberty Bonds, $5,000 par value, bought and paid for by the decedent.

As early as the year 1916, the decedent expressed himself as being comfortable and happy in the home of appellee, and declared that he was going to take care of appellee and his wife therefor. At different times during the years 1922 and 1923, he expressed himself to various parties that appellee and his wife had been mighty good to him, that they had given him the best home he had had since his mother died, and, at the time of making such statements, said that he had given her bonds, that she was taking care of him, and declared that he had given them the bonds which he said would not recompense them for what they had done for him. In the fall of 1923, he said "I have given them my bonds." He had no bonds except those that were found in the safety box. The decedent, in recognition of the kind treatment accorded him by appellee and his wife, and

of the comforts and conveniences which he enjoyed in their home, gave and delivered to appellee and his wife, said bonds which were found in said safety deposit box, amounting to $7,200.

Although all of said bonds remained in said box until after the death of decedent, appellee accepted the same as a gift, took possession thereof, collected interest thereon in 1923, and had notice and knowledge that the decedent had, in fact, given him said bonds as evidenced by his taking possession thereof, and his declaration in 1923 that the decedent had, in fact, given him some Liberty bonds, and all of said bonds are property of appellee and wife and have belonged to them since they were given to them by decedent.

As to all said treasury notes, of the value of $2,600 appellee has asserted title and claim thereto, has refused to surrender same to appellant and has unlawfully intermeddled therewith. They were the property of said decedent, and should be turned over and delivered to appellant administratrix, together with ten per cent. penalty.

The court stated conclusions of law, upon the foregoing facts, that the law is with appellant and that she is entitled to recover from appellee $2,600 worth of the treasury notes, and that appellee should turn over and deliver the same to her within thirty days, together with $260 penalty. After overruling appellant's motion to strike out parts of the special findings and appellant's motion for a new trial, the court rendered judgment in harmony with its conclusions of law, that appellant recover the treasury notes in the sum of $2,600, together with $260 penalty.

The errors relied on for reversal are that the court erred in trying this cause of action without a jury after appellant requested a jury; in its first conclusion of law, in this, that it failed therein to include a return to ap-

pellant of the $7,200 worth of United States Liberty Loan bonds, and in rendering and entering judgment for the return of only the $2,600 worth of United States treasury certificates, and in failing to adjudge a return of the $7,200 worth of United States Liberty Loan bonds; in overruling appellant's motion to strike out each of the several parts of the court's findings of fact and conclusions of law; and in overruling appellant's motion for a new trial.

In contending earnestly that the court erred in denying her request for a trial by jury, it seems to the court that appellant wholly mistakes the nature of the remedy which she seeks to enforce. Her action is against appellee as an intermeddler, and clearly is brought under §2775 Burns 1914, commonly known as the "intermeddling statute." The remedy which she seeks to enforce is purely statutory. Section 20, Art. 1 of the Constitution of Indiana provides that, "In all civil cases, the right of trial by jury shall remain inviolate." To remain inviolate is to continue inviolate as it had been theretofore at common law. It has been repeatedly held that this constitutional provision applies only to actions triable by jury at common law. *Allen* v. *Anderson* (1877), 57 Ind. 388. *Wright, Admx.,* v. *Fultz* (1894), 138 Ind. 594, 38 N. E. 175.

Not all cases that were not criminal were civil cases at common law. "Civil case" had a definite meaning at common law, and it was used in the Constitution in its common-law sense. *Lake Erie, etc., R. Co.* v. *Heath* (1857), 9 Ind. 558.

The words "in all civil actions" mean in all civil actions at the common law, as debt, covenant, assumsit, trover, replevin, trespass, action on the case, etc. *Allen* v. *Anderson, supra.* *Anderson* v. *Caldwell* (1883), 91 Ind. 451. Actions of purely statutory origin are not controlled by the constitutional provision,

and, unless provided for in the statute, a jury may not be demanded. At the time *Fessler, Admr., v. Crouse* (1880), 73 Ind. 64, and *Collier v. Jones, Admr.* (1882), 86 Ind. 342, cases relied on by appellant, were tried, there was expressly given by the statute, the right of trial by jury under the Decedent's Estate Act, 2 R. S. 1876, §188. But there is no such provision in the Decedent's Estate Act of 1881, and without such statutory provision there is no right.

The substantial question in this case is presented by appellant's assignment that the court erred in its conclusion of law in that it did not state as a conclusion that appellant was entitled to a return of the $7,200 of bonds. Appellant, by her petition, averred in effect that she, as administratrix, was the owner of the bonds, and in this court so contends, while appellee rests his claim thereto upon his contention that the bonds were given to him by appellant's decedent.

Appellant earnestly contends that the burden is on appellee to establish the elements of a gift, and that in this he has failed, but though it be conceded that the burden was with appellee to establish a gift, we think that clearly he has established such a defense. It was not necessary that the court's findings should affirmatively state that appellee did not exert an undue influence over appellant's decedent, for, in the absence of a fiduciary relation, and the fact that appellee gave the decedent some assistance in his business affairs does not necessarily indicate such relation, there is no presumption of undue influence, and a failure to find that there was no such undue influence is not a finding against appellee. There is nothing in the finding that suggests undue influence unless appellant may contend that kind treatment along with the comforts and convenience of a good home amounted to such influence and it is held that such ministrations do not constitute

undue influence. *Goodbar* v. *Lidikey* (1893), 136 Ind. 1, 35 N. E. 691, 43 Am. St. 296; *Stamets* v. *Mitchenor* (1905), 165 Ind. 672, 75 N. E. 579.

The fact, as appears by undisputed evidence, that through the years that he enjoyed the hospitalities of appellee's home, he repeatedly told others that he intended to give him or his wife the bonds, and that he had done so, and that he had the best home that he had had since his mother died, is convincing that he gave the bonds as an expression of appreciation, rather than that he was unduly influenced.

Nor was it necessary to find that appellant's decedent was a person of sound mind at the time of the alleged gift. Every person is presumed to be of sound mind. *Achey* v. *Stephens* (1856), 8 Ind. 411, and the absence of such a finding is not a finding against appellee on this question. Further, no such question was presented in the trial court. The court has expressly found that appellant's decedent gave and delivered the bonds in question to appellee in recognition of the kindly treatment that he had received at the hands of appellee and his wife, and there is ample evidence to sustain this finding. Where, as here, the property is in the joint possession of the donor and the donee, it is not required that there must be a manual delivery. All that is required is that the donor shall release dominion over the property, and that the donee assume dominion and possession thereof. *Tenbrook* v. *Brown* (1861), 17 Ind. 410; *Teague* v. *Abbot* (1912), 51 Ind. App. 604, 100 N. E. 27; 28 C. J. 638; 12 R. C. L. 935. The cases of *Hayes* v. *McKinney* (1920), 73 Ind. App. 105, 126 N. E. 497, and *Reasner, Admr.*, v. *Bohne* (1921), 76 Ind. App. 114, 129 N. E. 490, are readily distinguished from the instant case. Here, coupled with the repeated declarations that the decedent had given the bonds to appellee, is the fact that they were found

in a box rented jointly by appellee and the decedent, and to which both had access, in envelopes on which appellee's name was indorsed.

It was not necessary that appellee should plead affirmatively a gift by way of defense. In an action based upon §2775, *supra*, as here, the defendant may give in evidence under the general denial every fact that will tend to disprove the contention that the property involved belonged to the decedent. *Collier* v. *Jones, Admr., supra*.

There was no error in refusing to admit in evidence the inventory of the estate of the decedent. It could be no more than a self-serving declaration, prepared by appellant herself. Even if admissible, any error as to the court's action is waived by the failure of appellant to set out the same, or its substance, in her brief.

Appellant's witness having testified in chief from a memorandum of the contents of the safety box, the memorandum itself was admissible in evidence on cross-examination. *Pape* v. *Ferguson* (1902), 28 Ind. App. 298, 62 N. E. 712; *Acklen's Exr.* v. *Hickman* (1879), 63 Ala. 494, 35 Am. Rep. 54; *Collaway* v. *Varner* (1884), 77 Ala. 541, 54 Am. Rep. 78; *Smith* v. *Jackson* (1897), 113 Mich. 511, 71 N. W. 843. There is no contention that the bonds in controversy were not in the box, and appellant could not have been harmed by evidence of the other contents of the box.

Appellant presents error of the court in permitting Silas W. Kenny, a nephew of the decedent to testify, basing her objection on §551 Burns 1926, §521 Burns 1914. But the objection cannot prevail. The witness was not a necessary party to the issue or record, and his interest was not adverse to the estate.

After a careful examination of the record, and after

hearing the oral argument requested by appellant, we are satisfied that appellant was given a fair trial, and that a right result was reached.

Judgment affirmed.