## ABDON *v.* WALLACE ET AL.

[No. 13,166. Filed February 15, 1929. Rehearing denied June 26, 1929. Transfer denied February 1, 1933.]

*Miller, Dailey & Thompson, Albert L. Rabb, Thomas D. Stevenson, Perry E. O'Neal* and *Sidney S. Miller,* for appellant.

*Remster, Hornbrook & Smith, Paul Y. Davis* and *Kurt F. Pantzer,* for appellees.

NICHOLS, J.—On appeal, this cause, and No. 13,167, *George T. Abdon* v. *Charles C. Wallace et al.,* No.

13,168, *James I. Alley* v. *Charles C. Wallace et al.,* No. 13,169, *James E. Magennis* v. *Charles C. Wallace et al.,* No. 13,170, *Alexander E. Martin* v. *Charles C. Wallace et al.,* No. 13,171, *William Rother* v. *Charles C. Wallace et al.,* No. 13,172, *John H. Ryan* v. *Charles C. Wallace et al.,* No. 13,173, *George A. Taylor* v. *Charles C. Wallace et al.,* were consolidated for briefing and argument under the above cause number 13,166, by order of this court entered January 7, 1928. The cause of action asserted by the several appellants as plaintiffs in the trial court were identical, except in one particular, not here involved. The same persons were defendants in the trial court and are appellees here. Fred Cross and Earl Andrews, named as defendants in the complaint, were never served with process and were not parties to the judgment and are not, for that reason, named appellees. The same answers were filed in all the cases. The cases were tried together by the court without a jury and a single finding of facts and conclusions of law was filed, under a stipulation that it should be taken as having been filed in each case.

A ninth case, that of Everett Carter against the same defendants, was tried with those listed above, but Carter died shortly after judgment and no appeal was taken in that case.

This action is by appellant against appellees to obtain injunctive relief compelling appellees and those whom they represent to recognize appellant as a member of the Grand International Brotherhood of Locomotive Engineers, and one of its subordinate local divisions, and prohibiting appellees and those whom they represent from interfering with appellant's rights incident to such membership, and from interfering with other rights, not only incident to membership but possessed by appellant as a natural person. There were special findings of fact and conclusions of law on which judgment was

rendered for appellees, from which this appeal. Error in the conclusions of law is assigned. It appears by the findings that appellant is a locomotive engineer employed as such by the Cleveland, Cincinnati, Chicago & St. Louis Railroad Company, hereinafter called the 'Big Four,' continuously since several years prior to September 28, 1915, and desires to continue in such employment. He was 34 years old on January 7, 1916.

Grand International Brotherhood of Locomotive Engineers, hereinafter called the "brotherhood," is an unincorporated association of locomotive engineers in the United States and Dominion of Canada, and continuously, since a date prior to September 1, 1915, has included in its membership all but a small portion of the locomotive engineers in those countries.

Until February 27, 1916, the only local division of the brotherhood on the Chicago division of the Big Four was L. A. Thomas division No. 492, hereinafter called Division 492, which had its meeting place at Indianapolis. Appellant and all 'of appellees were members of Division 492 on January 7, 1916, and had been members thereof continuously since a date prior to September 1, 1915.

Each local division, including Division 492, at all times here involved, had local officers elected to perform the duties provided in the laws of the brotherhood, and had also a committee of three members, known as its local committee, whose duty it was to adjust, if possible, with the local officials of the particular railroad system, the grievances of the members of the local division. The chairman of each local committee was also the representative of the local division on the General Committee of Adjustment. Division 492 had a representative on such committee which was composed of one representative from each railroad division of the Big Four system, and was known as the General Committee of

Adjustment of the Big Four system. It was the duty of said committee to take up and settle with the management of the railroad system upon which it operated, grievances, controversies and questions affecting the interests of the brotherhood employed upon such system which did not require, for settlement, the participation of the president of the system. Every member of the brotherhood had the right to have any grievance settled or interest of his own protected by the Local Committee or General Committee of Adjustment. The expenses of said General Committee were paid from funds obtained by monthly assessments levied on the members of the brotherhood employed on the Big Four system. Appellant paid all such assessments levied against him up to and including January 7, 1916. The rules of said brotherhood provide that any locomotive engineer, in case of injustice, shall be entitled to the protection of the brotherhood committee of adjustment, on the division on which he is running, when application is made in writing to the local chairman.

At all times here involved each local division, including Division 492, was entitled to be, and was, represented by one delegate and an alternate to the Grand International Division of said brotherhood, hereinafter called the G. I. D. The G. I. D. consisted of the assembled delegates of all the divisions of the brotherhood, the grand international executive officers of the brotherhood and the president and secretary-treasurer of the Locomotive Engineers Mutual Life & Accident Insurance Association, hereinafter called the insurance association. Said G. I. D. met at Cleveland, Ohio, in 1915, 1918, 1921, and 1924. At all times it has been the supreme governing body of the brotherhood, and its enactments and decisions upon all questions are the supreme law of the brotherhood, which all divisions and members are required to obey. Originally it adopted and

has from time to time. revised a written constitution, certain statutes, standing rules and rules governing legislative boards of the brotherhood, hereinafter collectively referred to as the law or laws of the brotherhood.

The officers of the G. I. D. included a grand chief engineer, who was the chief executive officer, and other officers. At all times here involved Warren S. Stone was grand chief engineer.

Such grand chief engineer at no time here involved had the power under the rules and constitution of said organization to accomplish the expulsion or suspension of a member of the brotherhood himself or by a local division without preferring charges against such member, and without a trial and conviction of him by his division.

The laws of the brotherhood provided the single method by which a member could be punished for having violated any law, rule or regulation of the brotherhood, by preferring written charges against him before his local division; the bringing of such charges to the notice of the next regular meeting of the. division; the reference of such charges to an investigating committee of three members for investigating and report; the report of the investigating committee to the division and, if evidence against the accused be found, the delivery of a copy of the charges to the accused by the committee chairman, together with a notice to the accused of the time of his trial; the hearing of the evidence for and against the accused; the ballot of the members present at the trial on the question of guilt; and, upon conviction, except in cases where the penalty is fixed by the laws of the brotherhood, a ballot or ballots on the penalty to be inflicted in the following order: expulsion, suspension, reprimand or censure. In addition to the right of a member to have his grievances settled and

his interest protected by the local or general committee, each member, including appellant, from the time he became a member until January 7, 1916, has received and is entitled to continue to receive numerous benefits which are set out, which rights and the fact that appellant is a member of the brotherhood are and at all times have been of value to him.

Locomotive engineers who are members of the brotherhood are unfriendly toward engineers who are not members thereof, and are particularly so toward persons whom they regard as expelled or suspended members. Organized labor generally is opposed to the employment of engineers who are not members of the brotherhood. It is more difficult for non-member engineers than for members to obtain and remain in employment and to protect their interests.

Appellees, because of the matters hereinafter, ever since January 7, 1916, have claimed, and unless enjoined, will continue to claim that appellant is not a member of the brotherhood.

On September 28, 1915, William E. Rother was a member of local Division 492 and was in active service as a locomotive engineer employed on the Chicago division of the Big Four, and was and for some time prior thereto had been a headlight inspector. A few days prior to September 28, 1915, he was directed by the general superintendent of the Big Four to report on said date to a person in Washington, D. C. It was Rother's duty to obey such order, and he did so. Upon so reporting he was served with a subpoena commanding his appearance at a hearing then being conducted before the Interstate Commerce Commission. In obedience to said subpoena, he reported at the hearing. The hearing at which he reported involved, among other things, an investigation by said committee of the advisability of adopting a particular type of electric head-

light by the railroads of the United States. The type of headlight under investigation was what is commonly known as the carbon electrode type. The brotherhood and its grand chief engineer, Warren S. Stone, favored and were working for the adoption of said headlight. Upon reporting at the hearing, Rother was sworn and examined as a witness. He made no voluntary statements but answered such questions as were put to him. He testified to certain disadvantages inherent in the carbon electrode type of headlight, which he had observed in his use of it. He believed at the time he testified that his testimony was true, and it was in fact true.

Stone was present at the hearing at which Rother testified. He did not hear Rother's testimony but learned of it afterwards. Stone was displeased because Rother testified as he did, and claimed that Rother had testified contrary to the wishes of Stone and the brotherhood in the matter, and claimed that the act of Rother in so testifying constituted a violation of the following provision of the laws of the brotherhood relating to legislative boards: "Sec. 12. Any member or division who, by verbal or written memorandum to any one calculated to injure or interfere with national legislative matters, offered by our legislative representative at Washington or Mexico, or at any time makes suggestion to any one that may be detrimental to the interest of such legislation, shall be expelled when proven guilty as per Sec. 49 of the statutes." Stone thereupon directed the chief engineer of local Division 492 that charges should be preferred in the said division against Rother for violation of such brotherhood law, for unbecoming conduct and for interfering with the work of the brotherhood solely because he had so testified. At a subsequent meeting of Division 492 written charges were preferred against Rother for such alleged violation of the brotherhood law, for alleged violation of

obligation and for unbecoming conduct. He was tried on said charges and upon a ballot of the members of the division present at the trial he was found not guilty. The result of said trial was reported to Stone. Before Rother's trial, Stone had caused the fact to be known that he desired the conviction and expulsion of Rother because of his act in so testifying, and caused it to be known to appellee and others that if said Division 492 did not convict and expel Rother, he, Stone, would suspend the charter of Division 492. Appellee McHale, who was then chief engineer of Division 492, at the time requested Stone to take action against Division 492, and expected, intended and desired that Stone would suspend the charter of such division because it had acquitted Rother. Stone, on January 7, 1916, in writing ordered the suspension of the charter of Division 492, and directed McHale to forward the charter, books, rituals, seal, etc., of said local division to him at Cleveland, which order was immediately executed. The sole reason why said Stone suspended the charter of Division 492 was that said local division had acquitted Rother.

No provision of the laws of the brotherhood required the expulsion, suspension, reprimand or censure of said Rother on account of his having testified as aforesaid, before the Interstate Commerce Commission, and acquitting Rother on his trial was not a wilful violation of any rule or regulation of the brotherhood.

In suspending the charter of Division 492 it was Stone's purpose to deprive Rother of his membership in the brotherhood and of such benefits as Rother was entitled to receive by virtue of his membership, notwithstanding that Rother had been regularly acquitted after trial in the manner prescribed by the brotherhood, of the charges against him. No other charges were ever preferred against him. Stone believed that certain other

members of 492 had voted for the acquittal of Rother, or had favored or approved of his acquittal, or were his close friends and associates, and it was also Stone's purpose in suspending the charter of 492 to deprive those persons of their membership in the brotherhood and of such benefits therein as they were entitled to receive, except on certain conditions hereinafter found.

A plan was formed and agreed to by appellees and Stone and other members of Division 492 who thereafter became members of a new division, to form a new local division under a new charter bearing the number 492 or another number, and to transfer to the new division all the members of 492 except Rother and sixteen others. Said plan was fully understood and agreed to by appellees and Stone and by all the other persons who thereafter became members of the new division, and it was fully understood and agreed by all of said persons that the purpose of said plan was to deprive Rother, appellant and the sixteen others, subject to certain conditions, of their membership in the brotherhood, although Rother had been tried and acquitted on the only charges ever preferred against him, and although the only reason for eliminating the other members was that they had voted in favor of Rother's acquittal, or favored or approved of his acquittal, or were his friends.

Pursuant to the aforesaid plan to eliminate Rother and his friends, a new local division was organized on such Chicago division, on February 27, 1916, under a new charter, and known as L. A. Thomas Division 546, hereinafter referred to as Division 546. At the time of the suspension of its charter Division 492 had 192 members. Of that number, 175, including all of appellees herein, were transferred to Division 546. Appellant and sixteen others were not so transferred and were the persons above referred to whose membership the aforesaid plan was intended to extinguish. At the time

Division 546 was organized, appellant and the other sixteen men requested of the persons so organizing Division 546 that they be transferred thereto but their request was denied. The officers of Division 492 were, immediately upon organization of 546, elected to the same offices in 546, which they had previously held in Division 492, except George A. Taylor was pension secretary in 492, and another person was elected to this position in Division 546. Division 546 was and is the only local division of the brotherhood on the Chicago division of the Big Four. Subsequently, seven of the sixteen were transferred to Division 546, but the remaining persons above named have never been transferred thereto. The only reason they were denied a transfer to Division 546, either absolutely or at first conditionally, as hereinafter found is that Rother testified before the Interstate Commerce Commission and Stone claimed that the others either voted for the acquittal of Rother, or favored or approved of his acquittal, or were his friends.

No notice of the suspension of the charter of Division 492 was given to appellant or any one except McHale before the actual removal thereof from the meeting place of the division. No charges were preferred against appellant or against any of the sixteen who were not transferred to Division 546, nor were they tried before any local division on any charge whatever. No other action than as herein found to suspend the charter of Division 492, nor to eliminate said seventeen men as members was ever taken.

As a part of and in furtherance of the aforesaid plan to deprive appellant and the other sixteen untransferred members of Division 492 of their membership in the brotherhood and their rights resulting therefrom, appellees, acting under the direction of Stone, selected 175 members from the membership of Division 492,

including themselves, to be transferred to the new division without question; and they selected appellant and eleven others to be transferred to the new division upon condition that they would agree: first, that Rother had violated the laws of the brotherhood in testifying before the Interstate Commerce Commission; second, that Division 492 had violated the laws of the brotherhood by acquitting Rother upon his trial; and, third, to keep four members who had been excluded unconditionally and permanently, forever out of the new division should they or any of them ever apply for transfer thereto.

In each instance appellant and those named with him, refused to be transferred to the new division upon the conditions aforesaid, and it was thereupon agreed between Stone, appellees, and the remainder of the 175 members of Division 492 thereafter transferred to Division 546, that they should thenceforth forever be excluded from and deprived of their membership in the brotherhood, and of all participation in activities and benefits in the brotherhood or local division.

Appellant has never violated any law or regulation of the brotherhood.

No provision of any law of the brotherhood authorized the suspension of the charter of Division 492 or the expulsion, suspension, reprimand or censure of any of its members because of the action of said division in acquitting Rother of the charges against him as aforesaid.

Since the action taken by the G. I. D. in June, 1918, the brotherhood, G. I. D., and all the grand officers have regarded the said Division 492 as no longer in existence, have granted a new charter bearing such number to another division, and now regard the members of said former Division 492 who were not transferred as no longer members of the brotherhood.

On January 7, 1916, the property of Division 492 con-

sisted of a lease on its meeting hall, the furniture of such hall, and $314 in money in custody of appellee Davis as secretary-treasurer of the division.

Pursuant to the order of Stone, hereinbefore mentioned, said money was transferred to the grand treasurer of the brotherhood in Cleveland, Ohio, and has never since been in the possession or control of any of the appellees or of the Division 546.

After the suspension of said charter, appellant and others of said seventeen non-transferred members took exclusive possession of said lodge room of Division 492 and held and enjoyed the same to the exclusion of all former members of Division 492 until said lease expired and held possession of said furniture to the exclusion of appellees and the other 175 members of suspended Division 492, and thereafter sold such furniture and applied the proceeds to their own uses exclusive of all other former members of old Division 492.

Appellants, at the time of the attempted suspension of said charter, claimed that said acts of Stone and G. I. D. were ineffective to accomplish the legal suspension of the charter of said Division 492, or to terminate its existence, and that they themselves, as the only members of said division who had not transferred to Division 546, were the only remaining members of Division 492, and acted upon such claim in retaining possession of said hall, in holding and selling said furniture, and in dividing the proceeds.

Appellants never offered to restore to the former members of Division 492 any of said property or share therein, or to share the possession of the meeting hall.

Appellees and the other members of Division 546 and said Stone, from the time of the organization of Division 546, have continuously claimed and now claim and declare that appellant and the other persons above named who were never transferred to Division 546 are

not members of the brotherhood, but were expelled therefrom. Appellant and the other persons not transferred, as above named, claim and have always claimed that they are still members of the brotherhood and that the formation of Division 546 and the transfer to it of the other 175 members of Division 492 was wholly ineffective to terminate his and their membership in the brotherhood.

The acts of Stone and appellees and the other members of Division 546, in accomplishing the suspension of the charter of Division 492, and the organization of Division 546, and the transfer to the new division of all but the above named seventeen members of Division 492, were void.

Subsequently to January 7, 1916, appellant did not tender any dues and if any such tender had been made it would have been refused.

Subsequently to the suspension of the charter of Division 492 and to the organization of Division 546, appellant and the other persons not transferred to Division 546 petitioned said Stone for the return of the charter of Division 492, but the petition was denied.

Since the formation of Division 546, appellant and the other untransferred members of 492 have been excluded from all meetings of Division 546, and from participating in all activities and benefits of the brotherhood.

Appellant had a member's indivisible interest in said $314, which fund he then had the right to have applied in his behalf and on behalf of the other members to further the activities and benefits of the brotherhood.

At the time the charter of Division 492 was suspended, appellant was the owner of one or more insurance certificates issued by the insurance association which entitled him or his beneficiaries to certain benefits in the event of his disability or death. Said insurance association is a separate entity from the brotherhood,

but the president and general secretary-treasurer of the insurance association, prior to the year 1924, were members of the advisory board of the brotherhood and of the G. I. D. Since the 1924 convention of the G. I. D. and insurance association, the president of the brotherhood is also president of the insurance association, and both organizations have the same general secretary-treasurer. The conventions of the insurance association were held in each instance immediately after the convention of the G. I. D., and delegates to the insurance conventions were elected by the local divisions, and were required to be insured. In some instances the same delegates represented their divisions in both conventions but this was not always the fact. The insurance association and the executive offices of the brotherhood have both been located in a building owned by the brotherhood in Cleveland, Ohio, but separate offices have at all times been maintained apart from each other, and at no time prior to 1924 under a common directing head.

Upon the suspension of the charter of Division 492, John H. Ryan, on his own behalf, and on behalf of appellant and the other sixteen non-transferred members, and by their direction and authority, wrote to the insurance association on March 2, 1916, requesting instructions as to how the insurance assessments payable by him and those for whom he wrote should be paid. On March 4, 1916, the president of the insurance association in writing directed that said assessments payable by Ryan and the others, including appellant, should be paid to appellee Beggs, who had been insurance secretary of Division 492, and then was and continuously since has been insurance secretary of Division 546, until the membership of Ryan and those for whom he had written, in the brotherhood, including appellant, had been finally determined, and indicated that notice of such determination of membership would be given by Stone. Appellant

and the other sixteen untransferred members of 492 thereafter paid all their assessments for the year 1916 to appellee Beggs. Between March 4, 1916, and January 9, 1917, none of such untransferred members ever received any notice from Stone that the question of their membership in the brotherhood had been finally determined, nor were they given any notice from the insurance association or any one else that any insurance assessment tendered by them after January 7, 1917, would be refused.

On January 8, 1917, said untransferred members or some of them learned that said insurance assessments which had been levied by the insurance association and were ordinarily payable any time during the month of January, 1917, if tendered to said Beggs, would be refused on the grounds that more than one year had expired since said seventeen men had been expelled from the brotherhood. Thereupon, and on January 9, 1917, said seventeen untransferred members caused the amount of the assessments due from them and each of them to be tendered to said Beggs, who refused the tender of each and all of said assessments on the ground that he had been so instructed.

Thereafter, and on or about January 17, 1917, the general secretary of the insurance association wrote to each of the seventeen untransferred members, stating in substance that the president had directed him to protect all suspended members of Division 492, and that future assessments should be paid to appellee Beggs until said Fucht should instruct said Beggs on the subject, and advising that said Beggs had been instructed to accept such assessments if tendered.

Thereafter, as of date of January 25, 1917, appellant, together with the beneficiary or beneficiaries under his certificate of insurance, in writing notified the insurance association of the aforesaid tender to Beggs on

January 9, 1917, and of the refusal of said tender, and notified the insurance association that the refusal of said tender and other declarations and conduct of the insurance association amounted to a renunciation, repudiation and breach of appellant's contract on the part of the association, and notified the insurance association that it had declared and announced that appellant was no longer a member of it and had no rights under his certificates, and notified said association that all of said acts and declarations were wrongful and unlawful and amounted to an express and unequivocal repudiation of appellant's policy contract. Said written notice further stated that appellant elected to and did rescind and hold his policy contract for naught except only for the purpose of recovering damages from the association for violation thereof. Said notice also contained a demand for the dues and assessments paid by appellant with interest.

After an intervening exchange of notices, on March 31, 1919, appellant commenced an action in the superior court of Marion County against said insurance association, on his policies. Issues were joined by a general denial, and were tried by a jury which found for appellant and judgment was thereafter rendered for him in the sum of $317.09. An appeal was taken to the Appellate Court where the judgment of the trial court was affirmed and a petition for a rehearing was denied. A petition by the insurance association to transfer said cause to the Supreme Court was denied on March 27, 1923. See *Locomotive Engineers, etc.*, v. *Higgs* (1923), 79 Ind. App. 427, 135 N. E. 353. The present action was begun August 23, 1923.

The several demands and the several recoveries in actions brought at the same time by untransferred members of Division 492 were as follows:

|  | Demand | Judgment |
|---|---|---|
| George Abdon | $175.00 | $31.83 |
| James I. Alley |  | 317.09 |
| Everett B. Carter | 2,100.00 | 513.57 |
| James E. Magennis | 750.00 | 199.83 |
| Alexander Martin | 2,800.00 | 1,727.13 |
| William Rother | 2,200.00 | 1,723.75 |
| John Ryan | 1,200.00 | 1,032.00 |
| George Taylor | 500.00 | 32.71 |

At the time of the suspension of the charter of Division 492 appellant was in active service as an engineer. Carter, Rother and Martin, on account of their ages, were each ineligible to apply for new insurance at said time. Since said date Martin has retired from service as an engineer on account of his age, and Ryan, Alley and Magennis have each become ineligible to apply for new insurance because of age.

Local Division 546, at the time of the commencement of this suit, was and is the only division of the brotherhood on the Chicago Division of the Big Four. Appellees include all the officers of Division 546 charged with the administration of its affairs. Appellee Livingston is now the delegate from Division 546 to the G. I. D. Appellee James is now the chairman of the general committee of adjustment for the Big Four system. The question here involved is one of common or general interest to the entire membership of Division 546 and of the brotherhood, and said parties in interest to-wit: the members of Division 546 and of the brotherhood are numerous and it is impractical to bring them all before the court. Appellees fairly represent all the other members of local division 546.

Appellees, as alleged in the complaint, and said Stone, did heretofore unite, combine, conspire, confederate and agree to and with each other, on behalf of themselves and the other members of said Division 546 of said

brotherhood to drive appellant out of said brotherhood and to cause him to loose his membership therein, and to deprive him of his right and benefits therein, in violation of the provision of the brotherhood laws.

On these findings of fact the court states as conclusions of law, that the law is with the appellees; that appellant is not entitled to recover in this action and should take nothing; that appellant, by his action in refusing to keep in force his insurance policies and in electing to collect the cash value thereof, is precluded from recovering in this action; that appellants, by their conduct in keeping possession of the lodge room and property of, Division 492 and converting such property to their own use, and by their long delay in asserting that they were members of the new Division 546, and in bringing this suit, are not entitled to recover in this action.

From the court's finding of fact, it is apparent that the equities are altogether with appellants. It appears by the findings that Rother testified to what he believed to be the truth, and that his testimony was the truth; but his testimony was displeasing to Warren S. Stone who was the grand chief engineer, and he undertook to penalize Rother for so testifying by having him expelled from the brotherhood; and then because appellants, at a regular trial conducted according to the rules of the brotherhood, acquitted Rother, he determined that they must also be expelled. His conduct was reprehensible in the extreme, and we marvel that an association of the high standing of the Brotherhood of Locomotive Engineers retains in such a responsible position one whose ideals, if we may judge from his acts herein, are so out of keeping with the principles of common honesty. It is to be observed that Rother was directed by the general superintendent of the Big Four Railroad Company to report at Washington, D. C., and upon arriving, he was subpoenaed and commanded to

appear before the Interstate Commerce Commission and when he appeared he testified in answer to questions truthfully to facts offensive to Stone, and for which Stone undertook to penalize him and later appellants for acquitting him of any violation of the rules of the brotherhood. Who is this man Stone that he should presume to instruct a witness as to what his testimony should be before a governmental commission and to penalize him for testifying to the truth, and does the Brotherhood of Locomotive Engineers approve of such conduct? Appellants should prevail in this appeal unless certain defenses which appellees present, and which do not go to the real substantial equities of the case, were established, within the issues, and unless they were of such a character as to warrant conclusions of law in favor of appellees. We shall examine these defenses.

It is well for us to keep in mind that, as appears by the foregoing findings, appellees and Stone conspired with each other, on behalf of themselves and the other members of Division 546, and of the brotherhood, to drive appellant and appellants in companion cases out of the brotherhood, and to cause them to lose their membership therein, and to deprive them of their rights and benefits in violation of the laws of the brotherhood, and that such acts by which they undertook to accomplish their purpose were void. This is in harmony with the holding of this court in *Gardner* v. *Newbert* (1920), 74 Ind. App. 183, 128 N. E. 704. This authority also holds that it is immaterial that appellants therein were not suspended directly as individuals, but that the suspension was attempted indirectly by suspending the charter of the division and organizing a new division. A suspension of the charter of local Division 492, together with a refusal to transfer appellant and appellants in companion cases to local Division 546, was the equivalent of the suspension of such mem-

bers. Such suspension being void, as found by the court, appellant and those associated with him, were not thereafter required to seek relief within the brotherhood, but were entitled at once to resort directly to the courts. *Gardner* v. *Newbert, supra; Schou* v. *Sotoyme Tribe* (1903), 140 Cal. 254, 73 Pac. 996; *Pirics* v. *First Russian Society* (1914), 83 N. J. Eq. 29, 89 Atl. 1036.

It appears by the findings that appellant and those associated with him had valuable rights, that those rights, pursuant to a conspiracy on the part of appellees, were being interfered with, and that appellees, as officers of the local division and as representatives of the brotherhood, were interfering with these valuable rights of appellant and others. The acts of appellees being unlawful and void, courts of equity will interfere for the protection of such rights as appellant possessed. In 5 C. J. p. 1358, the rule is stated that a court of equity will reinstate a member, where the association, in suspending or expelling him, acted unfairly, or in bad faith, or beyond its powers, and not in accordance with its laws or the laws of the land, such relief being granted by way of a decree annulling the wrongful suspension or expulsion, adjudging the member to be entitled to the rights and privileges of membership, and directing his restoration or reinstatement, or enjoining the association from depriving him of such rights or privileges, or interfering therewith. Numerous authorities are cited to sustain this rule, among which are: *Mesisco* v. *Giuliana* (1906), 190 Mass. 352, 76 N. E. 907; *Krause* v. *Sander* (1910), 66 Misc. Rep. 601, 122 N. Y. S. 54; *Fritz* v. *Knaub* (1907), 57 Misc. Rep. 405, 103 N. Y. S. 1003, 108 N. Y. S. 1133; Sperry's App. 1887, 116 Pa. St. 391, 9 Atl. 478.

We conclude that appellant is entitled to recover in this action unless specifically precluded by reason of the third and fourth conclusions of law, the third conclusion

being based on findings as to insurance on evidence introduced to sustain appellee's third paragraph of answer, and the fourth on findings as to the alleged conversion of property of Division 492, which findings are not within the issues.

The third conclusion of law is based on appellees' defense as presented by their third paragraph of answer, and as to such defense, appellees have the burden of proof, and a failure to find any fact as to such defense is a finding against appellees. *National Surety Co.* v. *State* (1914), 181 Ind. 54, 67, 103 N. E. 105; *Piggly Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 67-8, 147 N. E. 771; *Graham* v. *Plotner* (1928), 87 Ind. App. 462, 151 N. E. 735; *Schafner* v. *Preston Oil Co.* (1932), 94 Ind. App. 554, 154 N. E. 780, 784-5.

It is appellees' contention that appellant's election to withdraw the surrender value of his insurance from the funds of the insurance association, and upon the failure of such association to pay such surrender on demand to prosecute his suit successfully, to recover the same, as appears by reference to *Locomotive Engineers* v. *Higgs* (1923), 79 Ind. App. 427, 135 N. E. 353, was an election on the part of appellant to treat his membership contract as at an end except as a basis for collecting damages. But we do not so understand. In the first place it was not appellant who sought to treat his membership contract as at an end, but it was the unlawful and unjustified act of Stone, conspiring with appellees who were acting under him, that so treated the membership contract. Whatever may be the facts as to the interlocking officials of the brotherhood and the insurance association, and of their occupying the same building and holding their meetings or conventions at the same time, they must be treated, as found, as sep-

arate entities, and any action on the part of appellant against the insurance company cannot be construed as an election on the part of appellant to terminate his membership contract with the brotherhood.

When appellant became a member of the brotherhood, as a condition precedent to such membership, he was required to take out insurance. Any requirement of appellant to continue such insurance was at most but a condition subsequent, and, property rights and valuable rights being here involved, such a condition will not be allowed to work a forfeiture expressly required by the terms and conditions of his membership. *Franklin Life Ins. Co.* v. *Wallace* (1883), 93 Ind. 7, 9, 10, 11; *Zeitler* v. *Concordia Fire Ins. Co.* (1912), 169 Mich. 555, 135 N. W. 332, 334; *Hile* v. *Troupe* (1909), 84 Nebr. 266, 121 N. W. 109; *Hunt* v. *Beeson*, 18 Ind. 380, 382; *Davidson* v. *Ellis* (1909), 9 Cal. App. 145, 98 Pac. 254, 255; 13 Corpus Juris, 565, Sec. 533. There was no such finding by the court and the absence thereof, as stated above, is a finding against appellees in this regard. On the contrary it was found by the court that the only way by which a member could be expelled from the brotherhood was by charges preferred, trial, and conviction and it was expressly found that the only reason for expelling Rother, appellant, and those associated with him was Rother's testimony before the Interstate Commerce Commission, and the act of appellant and those associated with him in acquitting Rother of any violation of the rules of the brotherhood.

The fact that appellant, under the circumstances of this case, chose to rescind his policy of insurance and to sue for its surrender value after the same was refused on demand, did not work a forfeiture of appellant's membership in the brotherhood nor preclude him from recovering in this action, and we hold that the court's third conclusion of law was error.

The findings of the court with reference to the conduct of appellants in keeping possession of the lodge room and certain property is wholly without the issue, and therefore any conclusion of law based on such findings is without force and the court's fourth conclusion of law is error. *Moran* v. *Miller* (1926), 198 Ind. 429, 437, 153 N. E. 890; *Enterprise, etc., Co.* v. *Craig* (1924), 195 Ind. 302, 309, 144 N. E. 542, 145 N. E. 309; *Brunson* v. *Henry* (1898), 152 Ind. 310, 316, 317, 52 N. E. 407; *Burton* v. *Morrow* (1892), 133 Ind. 221, 226, 32 N. E. 921; *Hatfield* v. *Rooker* (1914), 56 Ind. App. 1, 5, 104 N. E. 798; *Wilkins* v. *Newkirk* (1927), 85 Ind. App. 663, 671, 155 N. E. 516; *Smith* v. *McDonald* (1911), 49 Ind. App. 464, 468, 97 N. E. 556.

In keeping with the principle announced by these authorities in this regard, we hold that appellees' contention with reference to non joinder of the superior officers of the brotherhood as parties defendant requires an affirmance of the case, cannot prevail. In order to present any question of this kind appellees must have pleaded the same by way of plea in abatement, and they cannot now be heard to take advantage of the same under the general issue. *Lieberman* v. *Brothers* (1893), 55 N. J. L. 379, 26 Atl. 828; *Means* v. *Milliken* (1859), 33 Pa. St. 517; *Armour* v. *Ward* (1906), 78 Vt. 60, 61 Atl. 765; *Hyde* v. *Lawrence* (1877), 49 Vt. 361. We may also add that any finding or conclusion as to laches is beyond the issues and therefore without force.

The first and second conclusions of law, to the effect that the law is with appellees and that appellant is not entitled to recover, are each error.

The judgment is reversed with instructions to the court to restate its conclusions of law in harmony with this opinion and to render judgment accordingly.