The complainant is a member of the Union County Moving Picture Machine Operators Local No. 485, one of the defendants herein. He has been a member of such union *Page 594 
from the date of its organization on or about March 15th, 1917. The union has its offices in Union county, New Jersey. Its membership includes practically every moving picture operator in that county. In brief, the announced design and object of the organization is to enable its members to procure employment and fair wages under proper working conditions.
The complainant, five or six years ago, was employed as a moving picture operator at the Regent Theatre in the city of Elizabeth, Union county, New Jersey. Pending his good behavior, performing his work to the satisfaction of his employer, Warner Brothers, and observing the rules, regulations, by-laws and constitution of the local union, and of the International Alliance (the parent organization), his employment was secure. He held his position until December 20th, 1932, when, it is alleged, the union's president, acting on behalf of the executive board of the said local union No. 485, removed him. His employment at the Regent Theatre gave him the privilege of participating in a group insurance plan which was limited to the employes of that theatre. He insured himself in this way for the sum of $5,000 for which he paid the premiums due on the policy during the entire period of his employment in said theatre. His removal by the president of said local deprived him of the benefits of that insurance.
The complainant, as a member of the local, paid it regular monthly dues. In addition, he paid the sum of $3 a month for a "death benefit fund" which, upon his death, would entitle his beneficiary to receive the sum of $1,000. Expulsion from membership in the union carries with it a loss of such benefits.
Without membership in the local union, the complainant could not obtain a position as an operator, as aforesaid, in any of the theatres in Union county. The defendants admit that all of the theatres in the county are unionized, by reason of which, the complainant contends, the defendant union has a one hundred per cent. monopoly in the county of all the jobs similar to his. In the case of Lo Bianco (the complainant herein) v. Cushing,115 N.J. Eq. 558, in a per curiam *Page 595 
opinion, the court of errors and appeals, among other things, said:
"The complainant must have the approval of the Union County Moving Picture Machine Operators' Local No. 485 before he can obtain employment within the jurisdiction of that union. The union claims to own all the jobs and, apparently, exercises the rights of ownership in an arbitrary manner."
The testimony developed that there are more operator's positions in Union county than there are members in the union. This excess resulted in the creation of a system whereby non-members, who are termed "permit men," were given the opportunity to work at certain of the positions which were not covered by members. From this system, asserts the complainant, the inference must be drawn that he is entitled, by right of membership in the local, to a job. Complainant maintains that his trade, or business, with his membership in the local, is a property right which courts of law and equity are obliged to shield, protect and uphold. The courts of this state adhere to the principle that:
"A man's business is property. By the first section of the bill of rights of the constitution of New Jersey, the right of acquiring, possessing and protecting property is classed, as a natural and inalienable right which all men have, with those of enjoying and defending life and liberty, and of pursuing and obtaining safety and happiness. * * * `For the preservation, exercise and enjoyment of these rights [life, liberty and the pursuit of happiness] the individual citizen, as a necessity, must be left free to adopt such calling, profession or trade as may seem to him most conducive to that end. Without this right he cannot be a free man. This right to choose one's calling is an essential part of that liberty which it is the object of the government to protect, and a calling, when chosen, is a man's property and right. Liberty and property are not protected where these rights are arbitrarily assailed.'" Barr v. Essex TradesCouncil, c., 53 N.J. Eq. 101; Brennan v. United Hatters ofNorth America, c., 73 N.J. Law 729; Jersey City Printing Co. v.Cassidy, 63 N.J. Eq. 759. *Page 596 
In Hitchman Coal and Coke Co. v. Mitchell,202 Fed. Rep. 512, the court said:
"The inherent right of the individual laborer to sell his labor, which is his property, in any lawful manner or pursuit, and upon such terms and conditions as he may himself determine to be for his personal best interests, must be upheld by the law just as fully and freely, regardless of these union organizations as it is upheld in all the other relations of our civic life."
The rule enunciated in the cited cases, is expressed in the case of Walsche v. Sherlock, 110 N.J. Eq. 223, and inBayonne Textile Corp. v. American Federation of Silk Workers,116 N.J. Eq. 146; also in Frank Dugan v. Herold, 63 N.J. Eq. 443; Alfred W. Booth Brother v. Burgess, 72 N.J. Eq. 181,
and in Harris v. Geier, 112 N.J. Eq. 99.
The constitution and by-laws of the local No. 485 contained provisions in article 1, sections 3 and 4 (complainant's ExhibitC-7) that:
"Sec. 3. A wage scale committee of three members shall be appointed at a regular meeting who shall draw up and submit to this Local union a suitable scale of wages same to receive a majority vote of the members present, and voting. * * * After receiving the sanction of the parent body (International Alliance) it shall be presented to the employers of the members
of this Local on August first and shall be effective in thirty (30) days.
"Sec. 4. Wage Scale Committee shall discuss, arbitrate and sign contracts which will not be binding for more than two years."
In view of the last quoted exhibit, and in line with the decisions expressed in the cases above cited, the complainant alone, or in combination with others, had the right to negotiate with employers concerning rates of pay and conditions of work. If he became a party to any agreement by which he waived such right, such agreement must be strictly construed. There can be no doubt that where any contract of employment is awarded him through negotiations by the union, it then becomes his property; and the relation of employer and employe, arising therefrom, exists just as absolutely as *Page 597 
though the member had negotiated the contract himself rather than through an agent or representative of the union. 63 Corp. Jur.671 § 22. Any interference with this created contractual relation by third parties is an interference with a property right, which if unjustified, will be redressed by the courts of law or equity.
The recited sick or death benefits which are incidental to union membership, are rights of property which equity will protect. This rule finds confirmation in the cases of Pirics v.First Russian, c., Society, 83 N.J. Eq. 29; Van Houten v.Pine, 36 N.J. Eq. 133. The case last cited applied to insurance benefits.
The complainant was expelled from the union upon written charges which had been preferred against him by Charles Kasper, a member of the union, which were read at a special meeting of the local, he was, a few hours previously, notified to attend. They are as follows:
"Sept. 4, 1933.
Local 485, I.A.T.S.E.
I hereby prefer charges against Bro. Salvatore Lo Bianco for conduct unbecoming a member, in reference to his appeal to the General Executive Board of the I.A.T.S.E., also for violating Article No. 10, Section No. 2 of the International By-Laws as follows:
A member filing an appeal against the action of his Local shall be required to file a copy of appeal with the Local Union.
(Signed) CHAS. J. KASPER."
Neither of the constitutions and by-laws, in evidence ExhibitC-7 (the old constitution and by-laws) and Exhibit C-10
(referred to as the new constitution and by-laws) contain any provision that "conduct unbecoming a member" shall constitute an offense against the local. Article 10 of the new constitution,Exhibit C-10, adopted some six or eight months after this suit was instituted, enumerates the acts which constitute misconduct and offenses against the local or its members; but in no part of it does it appear that "conduct unbecoming a member" constitutes an offense and, it may be added, nowhere in it does a definition of the term appear. Then, if the complainant were expelled on the charge *Page 598 
of "conduct unbecoming a member," he was expelled for a cause which does not constitute an offense.
The other charge preferred by Kasper, is that complainant violated article 10, section 2 of the International Alliance by-laws, that "a member filing an appeal against the action of his local shall be required to file a copy of appeal with the local union." Was the complainant expelled on the latter charge of violating the constitution and by-laws of the International Alliance, and not for violating the provisions of the local constitution and by-laws? Article 10 of the International Alliance by-laws provides for appeals, time for filing, the form and the order of the same. Nowhere in it does it appear that a penalty may be imposed for violation of any of the sections under article 10. Section 2 of the last mentioned article, requires that a copy of the appeal shall be filed with the local union only when the party is appealing against the action of the local union. In the instant case, the complainant took an appeal, and, in appealing from the action of the local to the president of the International Alliance, he served a copy of the appeal upon the local union. His said appeal being there dismissed, he then appealed to the general executive board; but, in this last instance, he did not serve a copy of the appeal upon the local union, and it was for this, his failure to do so, he was expelled. The expulsion is based upon the second charge mentioned in the said Kasper writing.
Counsel for the complainant contends that section 2 of said article 10 does not require the complainant to file a copy of his appeal when appealing from the decision of the international president, and he quotes in support thereof section 5 of article 10 of the International Alliance constitution and by-laws, the title of which is "Order of Appeal:"
"The order of appeal shall be:
(1) To the local union from its own or its officers' decision;
(2) From decision of local union to the International President of this Alliance;
(3) From the decision of the International President to the General Executive Board;"
 * * * * * * *Page 599 
And section 6 — "Appeal from President's Decision:"
"In the event of appeal being taken from the decision of the International President of this Alliance to the General Executive Board, it shall be the duty of the President to submit a written statement to the General Executive Board setting forth reasons in support of his ruling."
These quotations clearly indicate that the complainant, in appealing from the decision of the international president, was not required to file a copy of the appeal with the local union.
Article 9 of the International Alliance by-laws contains provisions concerning charges for violation of the International Alliance constitution and by-laws; section 1 thereof is as follows:
"Section 1. Addressed to President.
All accusations or charges directed against any affiliated local union or member of this Alliance for violation of this constitution and by-laws shall be addressed to the International President."
Counsel for complainant takes the position that under this last-mentioned article, the International Alliance has reserved to itself all right and power to hear and determine charges of violation of its constitution and by-laws, and that in consequence, the defendant local, its officers and members, unlawfully, and without authority, placed the complainant on trial for the violation of the International Alliance by-laws, and that any ruling or decision by the local, its officers and members, was without jurisdiction and irregular, and, consequently, null and void. I think there is considerable merit in the contention. The local was without jurisdiction. Their proceeding was irregular and is, therefore, void and of no effect.
There was another written charge preferred against the complainant by Morris Sollish, which was read at a meeting of the local union. The minutes of the regular meeting of September 4th, 1933 (Exhibit C-2) declare this (Sollish) charge was placed on "the table" and not acted upon. The *Page 600 
correctness of the record of the minutes stands corroborated by the testimony of witnesses; and, therefore, since there was no action taken by the local upon the charge, it need not be considered here.
The complainant argues that the Kasper charges were neither properly presented, nor heard. The new constitution and by-laws, as herein above observed, were adopted some six or eight months after this suit was instituted. I do not quite understand counsel's attitude in discussing the provisions of that constitution; it can have no possible bearing on the instant case. But since both counsel frequently discussed it, at great length at the hearing, and in their memoranda, I shall briefly allude to it. Article 10 thereof, section 1 provides:
"Section 1. All charges must be in writing and signed, specifying the part or parts of this constitution so violated — except, however, in cases where members are charged with violating the Local Union By-Laws or trade or working rules, when no written charges are necessary and the member or members may be cited to appear at the next meeting of the Trial Board for hearing and trial."
Section 2 provides:
"Section 2. When written charges are filed — except against officers and representatives of Local Unions, the same shall be read but not discussed, at the next regular meeting of the Local Union and the Corresponding and Recording Secretary shall immediately send a copy of such charges to the accused stating when he is to appear before the Trial Board."
Section 3 provides, in substance, that the local shall decide whether the charges are cognizable, and if so, the president shall appoint a committee of three to examine the case. The committee shall notify the witnesses of the time and place of examination, and shall report its findings to the trial board at the next regular meeting, making such recommendations, as the evidence may seem to justify. The trial board shall then hear the evidence and shall vote first upon the recommendation of the committee, and failing to adopt such recommendations, they shall then decide the penalty to be imposed. *Page 601 
Section 4 provides, in substance, that the accused shall be given a fair and impartial trial and shall be granted a reasonable delay when the board feels the facts or circumstances shall warrant such a delay.
Section 5 provides, in substance, that the trial board shall report its findings and recommendations to the local union at the next meeting, which findings shall be considered the action of the local and shall conclude the case.
The provisions of article 8 of the old constitution and by-laws (Exhibit C-7) are substantially the same as article 10 of the new constitution and by-laws, excepting no trial board was created under the old constitution; but the recommendations of the committee of three were, under the old constitution and by-laws, required to be reported to the body and acted upon by the body.
The testimony of witnesses, and the minutes of the meeting, show that the complainant was tried by the local in the following manner: He received a telegram on the night of September 4th that a special meeting had been called for that same evening and he was required to appear and answer charges. (The complainant says that he received this telegram a few hours before the time and place set for the hearing. He denied that he received a copy of the charges which were preferred against him.) He appeared at the meeting and the above recited charges were then and there read to him by one of the members present. Complainant then arose and denied violating any of the provisions of the constitution and by-laws of either the local or the International Alliance. He requested that a trial committee be appointed before whom he could appear and present his defense. His request was denied. He testified he submitted his defense in a verbal statement which consumed approximately ten minutes; the defendants assert that he spoke for one-half hour. While the complainant was making his statement, the president asked him for his membership card, at the same time declaring that complainant was then automatically expelled from the local. The complainant refused to surrender his membership card. He was then requested to leave the meeting *Page 602 
room; the reason for the request not being made known. Complainant then announced that he was going home since he had been expelled, and, therefore, there was no reason for him to remain. The minutes of this meeting (Exhibit C-2) state:
"Bro. Salvatore Lo Bianco then left the room. Bro. Sollish moved that this body go on record as upholding the decision of its President in expelling Bro. Salvatore Lo Bianco for his failure to abide by their by-laws and the by-laws of the International Alliance. Motion seconded by Bro. Wilson. Motion unanimously carried."
It is quite evident that the local in conducting the so-called trial ignored the provisions of its constitution and contemptuously disregarded the complainant's rights. There is no evidence that the charges were ever read at any regular meeting of the local; nor does it appear that the complainant at any time received a copy of the charges preferred against him. The local before the hearing, or at any other time, did not even decide whether the charges were cognizable. Nowhere does it appear that the president appointed a committee of three to examine the case. The complainant was never summoned to appear before any committee, nor was he given an opportunity to produce witnesses. There is no record of a report being made by a committee, and there was no recommendation of any committee submitted "at the next meeting of the local union." The consideration which the constitution and by-laws declare a member is entitled to under such circumstances, was not accorded complainant; and the procedure surrounding the so-called hearing was not in conformity with that outlined in the constitution and by-laws of the local. It does not appear that the complainant waived any of the formalities which should have been present at the hearing; and, neither does it appear, that he waived any of his rights and privileges under the circumstances. The decision to oust the complainant was arbitrary, unwarranted and unjust and should be set aside.
The testimony of Thomas Cushing, one of the defendants herein, shows that the complainant's case did not come before *Page 603 
the trial board. He said it was a case of "automatic expulsion," and that the chair told complainant that "he was expelled and asked him for his card." The defendants set up in their answer that the complainant was expelled for violating article 10, sections 1 and 2, paragraph 10 of the new constitution (ExhibitC-10). Section 1 of this article provides that any member who resorts to a court of law without first exhausting all the remedies in the union shall be automatically expelled and dismissed. How that article can apply to the instant case since the new constitution was not adopted until July 11th, 1933, after the complainant filed his bill, has not at all been made clear, and there is no question in my mind that it does not; and it should not apply.
The case of Pirics v. First Russian, c., Society, supra, held that the constitution and by-laws of the association cannot be retroactive in its effects, and the rule there employed applies to the situation under consideration. Section 1 of the last mentioned article is the only section providing for automatic expulsion; and, since the complainant was automatically expelled, it may logically be inferred that such action was taken under said section 1, article 10; and since that article is retroactive, it is, therefore, without force and effect, and void in the instant case.
Section 2 of article 10 imposes a penalty of expulsion upon a member slandering or otherwise injuring a member. Presumably the charge by Sollish was presented under section 2 of article 10, but it was disposed of by "tabling" it, and no further action seems to have been taken upon it. Polin v. Kaplan, 257 N.Y. 277; 177 N.E. Rep. (Court of Appeals, New York, 1931) 833.
The defendants assert that the complainant failed to exhaust the remedies within the union as provided by the constitution and by-laws. The case of Walsche v. Sherlock, supra, considers that question and the court there discusses and disposes of it in the following manner: "(1) Where the question is purely social, a member must exhaust all remedies set up within the association before he appeals to the court for reinstatement; (2) but if property rights are *Page 604 
involved, in the absence of an express agreement to exhaust the remedies provided within the association, the member may appeal to the court without having exhausted his remedies; (3) and even if the member has agreed to exhaust the remedies within the association, where property rights are involved, he is not so required if pursuing the remedies within the association would be futile, illusory or vain." In the case last cited the court stated that a constitution and by-laws affording internal remedies must be strictly construed and a member is not obliged to pursue a remedy of grace.
The case of Knights of Pythias v. Eskholme,59 N.J. Law 255, holds that where the expulsion is void because of lack of jurisdiction, or because of irregularity in the proceedings, a member is not required to exhaust the remedies within the association. The court there, among other things, said:
"Here, it will be seen, was no such vote as the constitution requires; the separate questions were not put as directed and a simple motion to suspend was made and passed; and this constitutes a further irregularity.
 * * * * * * *
"In this case it will be seen that jurisdiction was not acquired by proper notice of the appointment of a committee of trial, and that the proceedings were in other respects irregular and not such as to justify or sustain a judgment.
"The want of jurisdiction does away with the obligation to seek relief by appeal, even when required by the constitution of a lodge, in otherwise proper cases.
"`The obligation to appeal is not imposed when the judgment is void for want of jurisdiction. * * * The duty of an expelled member to exhaust, by appeal or otherwise, all the remedies within the organization arises only where the association is acting strictly within the scope of its powers.' Bacon onBenefit Societies § 107.
"The judgment rendered by the circuit court and approved by the supreme court should be affirmed." Rueb v. Rehder, 174 Pa. 992; Abdon v. Wallace, 95 Ind. App. 604; 165 N.E. Rep. 68;Webster v. Rankins, 50 S.W. Rep. 2d 746.
In Rueb v. Rehder, supra, the court said: *Page 605 
"While there is some conflict among the authorities upon this question, we believe that the weight of authority is to the effect that if the action of the lodge is without jurisdiction, or without notice or authority, it does not change the legal rights or status of any one; that the obligation to appeal within the order is not imposed when the judgment is void for want of jurisdiction."
In Abdon v. Wallace, supra, the following appears:
"Such suspension being void, as found by the court, appellant and those associated with him were not thereafter required to seek relief within the brotherhood, but were entitled at once to resort directly to the courts. Gardner v. Newbert, supra;Schou v. Sotoyome Tribe, 140 Cal. 254; 73 Pac. Rep. 996;Pirics v. First Russian Society, 83 N.J. Eq. 29;89 Atl. Rep. 1036."
In Webster v. Rankins, supra, the court said:
"It is further contended that the plaintiffs cannot maintain this action because it is not shown that they have exhausted all remedies provided within their own organization. There is not doubt as to the general rule that it is the duty of the member of an organization to exhaust his remedy, by appeal or otherwise, within the order, before resorting to the courts for redress. But this rule has application only when the organization has acted strictly within the scope of its powers. It therefore has no application here. Hall v. Morrin (Mo.App.),293 S.W. Rep. 435; Swaine v. Miller, 72 Mo. App. 446; Mulroy v. SupremeLodge, 28 Mo. App. 463; Mullen v. Seegers, 220 Mo. App. 847;294 S.W. Rep. 745; Slater v. Supreme Lodge, 76 Mo. App. 387;Glardon v. Supreme Lodge, 50 Mo. App. 45; Knights and Daughtersof Tabor v. Reid (Tex. Civ. App.), 270 S.W. Rep. 241;State v. Gesellschaft, 144 Wis. 516; 129 N.W. Rep. 630, 631;People v. Order of Foresters, 162 Ill. 78; 44 N.E. Rep. 401;Lowry v. Stotzer, 7 Phil. (Pa.) 397."
Under the facts in this case, it is patent that the complainant was not bound to exhaust his remedies within the union. In the first place, he did not agree to do so; and, then, his expulsion was irregular, and void for want of jurisdiction. *Page 606 
The complainant held his position at the Regent Theatre for a period of more than four years, or until December 20th, 1932, when he was removed at the instance of the union because of his writing an alleged uncourteous letter to the executive board of the union. George Cushing, one of the defendant's witnesses, in effect, testified the complainant had been "a source of trouble" to the local union board; and had "failed to co-operate" with it and "fought against picketing at the State Theatre;" and had "done other things detrimental" to the local; and because of his lack of co-operation with the union, he was "unworthy of holding the job at the Regent Theatre." There was submitted, in evidence, the minutes of the executive board meeting of December 20th, 1932 (Exhibit C-14), which reads as follows:
"So be it resolved that inasmuch as the shift positions governed by our local are the positions offering greater leisure to the members there employed. It has been the policy of this local to award these positions to members in good standing who performed some signal act or acts benefitting this Union or to members who will use this leisure to the good and welfare of our local. It is deemed by a unanimous vote of the Executive Board of this local that the actions past and present of Bro. S. Lo Bianco has forfeited his right to enjoy this gift at the hands of this Union."
It is my opinion that the action of the executive board in removing the complainant from his position in the Regent Theatre was unreasonable and without justification or authority, and he should be reinstated. Lo Bianco v. Cushing, supra.
I shall advise a decree to conform with my views expressed herein. *Page 607