FRANK FLEMING, complainant,

*v.*

MOVING PICTURE MACHINE OPERATORS OF ESSEX COUNTY, NEW JERSEY, LOCAL No. 244, &c., et al., defendants.

[Decided January 31st, 1938.]

*Mr. Nathan W. Franzblau,* for the complainant.

*Mr. Andrew B. Crummy,* for the defendants.

BERRY, V. C.

This suit is an aftermath of the decision of this court in the consolidated cases of *Collins* v. *International Alliance, &c.,* and *Maglio* v. *Moving Picture Machine Operators of Essex County, New Jersey, Local No. 244, et al.,* reported in *119 N. J. Eq. 230; 182 Atl. Rep. 37.* The complainant by this bill seeks his reinstatement as a member of Local No. 244. He was expelled by action of the executive board on December 21st, 1936, for non-payment of dues and this action was later, on January 19th, 1937, confirmed by vote of the members.

The complainant was one of the so-called senior members who, as complainants, joined the juniors in their fight for complete membership in *Maglio* v. *Moving Picture Machine Operators, &c., supra.* In that litigation the juniors were accorded the right to full membership in the union upon

payment of the required initiation fee, &c. The final decree entered therein required the juniors to pay the necessary sums for admission on or before August 29th, 1936. The complainant in this cause, however, was not a junior; he was a so-called senior who with many other seniors had joined the juniors in that litigation and at the time of the entry of the final decree in that cause he and others were in arrears in the payment of their dues. In September, 1936, as appears from the minutes of a meeting of the executive board, an arrangement was made whereby the complainant was to pay the local $25 per week until his arrearages were made up, and to assist him the business agent procured for him an additional day's work every week at about $12 per day, which the testimony shows lasted for about seven or eight weeks. Complainant paid only $95 during this period in three payments of $25 each and one of $20. On December 14th, 1936, the executive board of the local took action with respect to a number of the so-called juniors who had not paid the amount of the initiation fees and dues as required by the final decree in the prior litigation, and extended the time for such payments by them to Monday, December 21st; and the secretary was instructed to notify these men that the zero hour would be December 21st, 1936, at twelve o'clock noon, and that failure to comply with the notice would result in their expulsion from membership in the local. The minutes of that meeting also contain the following record:

"The Treasurer also called to the attention of the board the cases of Bro. F. Fleming who owed 309.00 and Bro. R. Webb who owed 315.00 who according to our by laws stood expelled they being over one year in arrears in their dues The Board instructed the Treasurer to notify both of these Bros. that unless they paid their dues by 11.00 of Jan 21, 1936 they would be expelled as per Const. by laws local 244 Article 14, Page 20 & 21, Section 8."

(Obviously the year referred to in this extended date was 1937 instead of 1936.)

On the following day, December 15th, the treasurer sent the following notice to the complainant:

"December 15th, 1936.

Mr. Frank Fleming
125 Atlantic Avenue
Long Branch, N. J.
Dear Sir & Bro.:—
    You are hereby notified to appear before the Executive Board Monday December 21st 1936 at 11 A. M. at the Local Office. Regarding your indebtment of $309.00 with must be paid in full on the above date. Failing to do so you will be suspended according to the Local's By-laws Article 14 Section 8.
                          Fraternally yours,
                                    WILLIAM C. UESSLER,
                                              Treasurer."

The by-laws of the union provide for automatic expulsion of a member for non-payment of dues upon his becoming in arrears for more than one year, but the customary practice was for the executive board to act on each individual case of delinquency. As shown in the Maglio Case, supra, dues were very high and amounted practically to extortion. The exactions from the junior members with a weekly salary up to $50 were ten per cent. of that amount and fifteen per cent. of the salary received above $50, so that, as appears from the opinion in the prior litigation, a member who received a salary of $100 a week would be obliged to pay $12.50 per week or $650 a year, plus $36 in dues, as tribute for the right to work. The evidence in the instant case shows that the complainant's dues amounted to $180 per annum. This is the regular rate previously applicable only to seniors.

Notwithstanding that the executive board had extended the time for complainant to make up his arrearages of dues to January 21st, 1937, the treasurer, for some unexplained reason, notified him to pay up by December 21, 1936, the date fixed as the deadline for the junior members as above stated. This notice was sent to complainant by registered mail addressed to him at his home in Long Branch. The letter arrived there on Thursday preceding Monday, December 21st, but as complainant was working in Essex county he did not actually receive it until Saturday, December 19th. The secretary, Mr. Oppenheimer, who wrote the minutes of the executive board meeting of December 14th, 1936 (these min-

utes being written up while the board was in session and as
the different matters were taken up and disposed of) says that
the minutes of that meeting referring to the complainant's
arrearages were written in error and that the extended date
for payment should have been December 21st, 1936, instead
of January 21st, 1937; but he also testified that the minutes
as written were approved at the following meeting of the
board and later at a meeting of the members. He apparently
did not discover his error, if any, until the date of the final
hearing; at least there is no indication that he did and there
was no attempt at correction before or after the minutes were
approved. However, I prefer to rely upon the minutes of
the meeting written while the meeting was in progress rather
than upon the testimony of the secretary whose testimony
cannot be received at its face value. I do not consider him
a credible witness. Much of his testimony in the former
litigation, of which I have a very vivid recollection, was false;
and it has been demonstrated in this cause that he has testi-
fied falsely here also; nor is the testimony of Kaufman, the
business agent, of any greater value. I find as a fact, there-
fore, that the time for the payment by complainant of arrear-
ages of his dues was extended to January 21st, 1937.

On Monday, December 21st, 1936, following the receipt
of the treasurer's letter, the complainant went to the office of
the defendant local at shortly after ten o'clock in the morn-
ing, but was not admitted to the board meeting until after
eleven o'clock when he was told that he was too late; that
the deadline was eleven o'clock and that he was out. He
explained that he had not received the notice until Saturday,
December 19th; that he did not have the money necessary to
pay his arrearages and had not had time to borrow it; but
that if given a few days he would be able to do so. He was
told that he was out, and that was all there was to it. How-
ever, the following Monday, December 28th, complainant
again went to the office of the local, having in the meantime
borrowed sufficient money from a friend to pay his arrears of
dues, and he then tendered to the executive board, which was

in session, and its secretary, $309 in cash in payment of his arrears of dues, but it was refused. He then went directly to the office of counsel who had represented him in the previous litigation and consulted Mr. Ward J. Herbert, of the firm of McCarter & English, who communicated with the secretary of the local by telephone and endeavored to persuade him to accept the money, but without success. The cash was later, at about the time of the filing of this bill, turned over to Mr. Herbert, who apparently still has it; and he has offered it to the local on different occasions in the meantime, but without success. The secretary, Mr. Oppenheimer, denies that the complainant returned with the money and tendered it on December 28th, and the business agent corroborates him; but as already stated I do not consider either of these witnesses worthy of belief; and evidence corroborative of complainant's story indicates that these two officials testified falsely. A member of the defendant local, whose name I do not for the moment recall, testified that he was in the local office on the morning of December 28th, 1936, and saw complainant there also, and that complainant said he had the money to pay his back dues and showed him a roll of bills. In answer to questions propounded by the court as to the source of the cash tendered to the local by the complainant, he testified that he had borrowed it from a friend and neighbor in Long Branch; and at my suggestion the final hearing was adjourned to chancery chambers in Long Branch where further testimony was received. Complainant's friend and neighbor, a Mr. Granetti, who is manager of a chain grocery store in Long Branch, and who has been there employed for seventeen years last past, and as to the truthfulness of whose testimony there cannot be the slightest doubt, testified that on December 26th, 1936, he loaned the complainant $400 in cash, $300 of which he withdrew from his savings account in the Long Branch Trust Company. He produced his bank book, and the bank, through one of its officers, produced its records, which showed the withdrawal by the said Granetti of $300 from his savings account at that

bank on December 26th, 1936. This witness testified that he had the additional $100 in his pocket and he also produced a note or receipt drawn by him in his own handwriting and signed by the complainant and the complainant's wife in which the receipt of $400 in cash was acknowledged and the signers of the paper agreed to repay it and pay interest at six per cent. thereon monthly until paid. Granetti said the money was loaned to Fleming, the complainant, expressly to pay his arrears in dues and to secure his reinstatement. The proof that complainant was in funds for the payment of his delinquent dues on December 28th, 1936, I consider to be positive and conclusive, and in view of this proof I have no hesitancy in saying that I find as a fact that, on December 28th, the complainant went to the office of the defendant local and tendered $309 in cash to the local and its secretary in payment of the arrearages in his dues owing at that time and that it was refused. There is other testimony indicating a continued effort on the part of the complainant to induce the defendant local to accept the money which he had tendered. Although the constitution and by-laws of the local provided for no appeal from the action of the executive board in expelling a member for non-payment of dues, the complainant and his counsel were told by the secretary of the union that complainant might have the benefit of an appeal to the members and accordingly the matter was brought before a meeting of the members on January 19th, 1937, by a Mr. Higginson, who was also a member of the local. Mr. Higginson testified that he had sufficient moneys in his pocket at that time to pay the arrears in the complainant's dues, together with a $5 fee for reinstatement. He testified that this would require $314, and that he had that amount in his pocket at the time. Complainant testified that he had given this sum of money to Mr. Higginson for that purpose. The credibility of this testimony was seriously impaired on cross-examination, and I am uncertain whether or not the witness Higginson was in funds for the payment of complainant's arrearages on January 19th, 1937, and I am uncertain also

as to whether or not sufficient moneys had been turned over to Mr. Higginson by the complainant; but, in the view I take of this matter, what the facts are touching that point is immaterial. The minutes of the meeting on that day show that Higginson did appear and make a motion for the complainant's reinstatement, which motion was lost. But the important fact is that the complainant tendered the necessary amount of cash to the local in payment of his delinquent dues on December 28th, 1936, long prior to the expiration of the grace period fixed by the executive board on December 14th, 1936, and that this tender was refused. It is true that under the provisions of the by-laws the executive committee might have refrained from taking any action to extend the time for payment of delinquent dues, and by a strict enforcement of these provisions the expulsion of the complainant would have ensued automatically; but it did not do that. It was customary for the union to be lenient with members touching the payment of their dues, and to give them additional time beyond the one year period when necessary—and the exactions from the members often made it necessary. In granting an extension of time to the complainant the local was but following its usual custom. Having extended the time within which complainant could pay his arrears to January 21st, 1937, the refusal of the local to accept the $309 when tendered was unjustified and the complainant's expulsion illegal. The complainant has been a member of the defendant local for many years. His membership is a valuable property right of which he cannot be deprived by arbitrary and unjustifiable action of the officers of the local. *Lo Bianco* v. *Cushing* (*Court of Errors and Appeals*), *115 N. J. Eq. 558; 171 Atl. Rep. 558; 117 N. J. Eq. 593; 177 Atl. Rep. 102; affirmed, 119 N. J. Eq. 377; 182 Atl. Rep. 874.* As is shown by the opinion of this court in the *Collins* and *Maglio Cases, supra,* the defendant local has a virtual monopoly of the moving picture operators' positions in Essex county—the testimony in this cause was to the effect that not more than four or five out of all of such positions in Essex

county are not controlled by this local. The complainant has no aptitude for any trade except that of an operator of moving picture machines, which he has followed for upwards of twenty years. To deprive him of his membership in this union would mean that he could not work at his chosen trade or profession in Essex county and because of the control of like positions in other North Jersey counties by affiliated locals, the chances of employment would be slim indeed. This field of employment is under the complete and absolute domination of the defendant union and affiliated locals. *Lo Bianco* v. *Cushing, supra.* The evils resulting from such dominance are discussed in my opinion in the *Collins* and *Maglio Cases, supra,* and need not be repeated here; but they are sufficient to cause public concern. The members of this union are not slaves to capital, their employers, but they are virtually slaves to the business agent and the officers of the union by whom they are dominated in a wholly arbitrary and autocratic manner. As stated in my opinion in the previous litigation, "the condition resulting from this system is but modified slavery." In the instant case there is credible testimony to the effect that complainant's expulsion was the penalty for his joining as complainant in the previous litigation. The action of the executive board in expelling him was unreasonable, arbitrary and unjustifiable and I will advise a decree directing his reinstatement upon the payment of dues delinquent on December 21st, 1936.