[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 337 
On bill, c. On final hearing.
This controversy concerns the plaintiff's right to work at his chosen trade, which is a property right (Lo Bianco v. Cushing,117 N.J. Eq. 593, affirmed 119 N.J. Eq. 377), and the protection of that property right from unlawful interference by the defendants.
The original bill in this cause was filed on April 6, 1944; the first amended bill on April 18, 1944; and a second amended bill on May 24, 1944. The cause came to a final hearing before the late Vice-Chancellor Woodruff on February 26 and 27, 1945, but remained undecided at his death. After September 15, 1948, the effective date of the Judicial Article of the 1947 Constitution, the case was assigned to me for decision.
The prayers of the second amended bill of complaint, so far as now pertinent, are as follows:
"2. That John H. Mathis Co., its agents, servants, and employees, and the agents, servants and employees of the Industrial Union of Marine and Shipbuilding Workers of America, Local No. 56, may be enjoined from applying the contract and more particularly Article 2, Section c of said contract between the said John H. Mathis Co. and the Industrial Union of Marine and Shipbuilding Workers of America, Local No. 56, to suspend the complainant from his employment as a Marine Electrician (2nd class).
"3. That the said John H. Mathis Co., its agents, servants or employees be enjoined from recording on the employment record of the complainant, Harry P. Cook, `Suspension for the non-payment of Union dues'; that I.U.M.S.W. of A., Local No. 56, be enjoined from including the name of Harry P. Cook on its membership rolls; that I.U.M.S.W. of A., Local No. 56, be enjoined from placing the name of Harry P. Cook on the delinquent dues list of its membership to the John H. Mathis Co."
This controversy arises out of the following facts and circumstances as disclosed by the record, and as I find them:
The plaintiff is a marine electrician and was employed as such by the New York Shipbuilding Corporation at Camden, New Jersey, on November 29, 1941 to August 10, 1942. At the time of his employment he was handed a printed copy *Page 339 
of an agreement between the New York Shipbuilding Corporation and the Industrial Union of Marine and Shipbuilding Workers of America, Local No. 1, effective June 23, 1941. Attached to the inside of the cover of that copy was a printed notice which reads as follows:
 "NOTICE TO NEW EMPLOYEES
"Your attention is called to the fact that the New York Shipbuilding Corporation has a labor agreement with the Industrial Union of Marine and Shipbuilding Workers of America, Local No. 1.
"You are advised that your becoming a member of this Union will not interfere in any way with your employment nor retard your advancement.
"The Management requests that you examine the copy of the Agreement handed to you herewith, particularly Article 2, which requires you, as a condition of your employment, to become a member of the Union within three weeks.
"For further information you are referred to the Union Shop steward in your department or to the Union Office at 2332 Broadway, Camden, N.J."
Pursuant to this notice and the terms of the written agreement, he applied for and was duly admitted to membership in Local No. 1 of that union, and remained a member thereof until he voluntarily gave up his employment with the New York Shipbuilding Corporation on August 10, 1942, when he also resigned from the union, expecting to go to Virginia on construction work of a different character. He spent about six weeks on that job in Virginia, for which he was not paid, and he then decided to return to his trade as a marine electrician. On December 4, 1942, he applied for a position as marine electrician at the plant of the defendant John H. Mathis Co. in Camden, and began work there on December 7, 1942. When he applied for the position he asked if it was necessary for him to be a member of a union in order to obtain employment and was advised by a representative of the company that it was not; that the company's business was conducted on the open shop plan; that the company had a contract with a union which he could join if he desired, but that membership therein was not mandatory. At that time there was in force an agreement between the defendant John *Page 340 
H. Mathis Co. and I.U.M.S.W. Local No. 1, dated January 12, 1942, which contained the following provisions touching Union membership:
 "ARTICLE II
"(a) The parties hereto agree that there shall be no discrimination, interference, restraint or coercion by either of the parties against any employee because of membership or non-membership in Union.
"(b) Union agrees not to transact Union business on Company's time except as hereinafter provided.
"(c) Any employee who is a member of Union at the time of the execution of this agreement and any employee who becomes a member of Union must remain a member in good standing as a condition of his continued employment.
"(d) Union agrees that it will admit to membership in Union all present employees and all future employees hired or rehired by Company who, under the terms of this agreement, are represented by Union and who are eligible to membership in Union under the constitution and by-laws."
Of the terms of this contract, the plaintiff had no knowledge.
On May 12, 1945 the defendant Local No. 56 received a charter from the National body of Industrial Union of Marine and Shipbuilding Workers of America and was given jurisdiction over the North Camden area, in which the defendant Mathis Company's plant was located, and Local No. 56 then took over the contract between the defendant Mathis Company and Local No. 1 and succeeded to all the rights and obligations of Local No. 1 thereunder. Previous to the chartering of the defendant Local No. 56, Local No. 1 had had jurisdiction in the North Camden area. On July 20, 1943, Local No. 56 entered into a contract with the defendant John H. Mathis Co., Article II of which is substantially in the form of Article II of that company's contract with Local No. 1 above quoted.
The plaintiff worked for the Mathis Company without incident until May 22, 1943, when he received a notice from Local No. 56, signed by Frank A. Evans, executive secretary, to the effect that he was in arrears in dues to that local from September, 1942 to May, 1943, in the amount of $15.75. And under date of May 25, 1943 he received a further notice to the effect that he was "fired-delinquent in Union dues." As he *Page 341 
was not a member of any union, having resigned from Local No. 1 on August 10, 1942, and having been advised that union membership was not necessary for his current employment, he took these two notices to a Mr. Cale, the personnel manager of the Mathis Company, and inquired as to their meaning and there received what might be considered a not too polite "brush-off" and was referred to the office of the I.U.M.S.W. of A., Local No. 56, in Camden. He immediately went there and met Mr. Evans, the executive secretary of that local, who informed him that because of his previous membership in Local No. 1 at the New York Shipbuilding Corporation he was subject to the contract then in existence between Local No. 56 and the defendant Mathis Company, and that unless he paid up his delinquent dues from September 1, 1942 to May, 1943, he would be fired by the Mathis Company. The plaintiff asked to see the contract between the defendant Local and the Mathis Company but was told that there was none available at that time. And none was available for many months thereafter and not until plaintiff's counsel obtained a copy from counsel for Local No. 56 almost a year later. After considerable conversation between the plaintiff and Mr. Evans, the latter told the plaintiff that he would compromise the matter by having the plaintiff reinstated in Local No. 1, for $3.75, and would waive the delinquent dues in the amount of $15.75. The plaintiff objected but was told that this was the only way in which he could retain his employment and that he was subject to the local's contract. Whereupon the plaintiff drew his check for $3.75, to the order of I.U.M.S.W.A., C.I.O., Local No. 1, dated May 29, 1943, and gave it to Mr. Evans, stating that he was paying that sum under protest and only to protect his rights and that he intended to employ counsel to protect such rights. At that conference with Mr. Evans the plaintiff had his dues book, showing his membership in Local No. 1 and his withdrawal therefrom on August 10, 1942, and showed it to Mr. Evans in support of his argument that he was not subject to any Union contract with his employer. *Page 342 
This book he left with Mr. Evans for the purpose of his reinstatement in Local No. 1, which he sought under protest.
The constitution of the I.U.M.S.W.A., article IV, section 10, provides as follows:
"Sec. 10. (A) In the event of any member removing from one district into another, where a Local of this Union exists, he may be transferred without the payment of an additional initiation fee, provided he is paid up to date and a member in good standing in his former Local.
"Any member changing employment to a yard engaged on new construction must, within thirty days from the date of his new employment, transfer his membership to the Local whose jurisdiction covers that yard.
"(B) Any member of this Union, upon leaving the industry, may withdraw from the Union. Upon such withdrawal, the officers of the Local, if said member is paid up to date, shall mark the withdrawal in his dues books, which he may retain.
"If the member returns to the industry, he shall be reinstated as a member of the Union in the Local within whose jurisdiction he is employed upon his return to the industry, upon payment of the current month's dues to that Local."
The by-laws of Local No. 56, article III, sec. 2, provide as follows:
"Application for Membership: No person shall be admitted to membership, unless he shall have signed and submitted an application form."
Section 9 fixes the initiation fee at $2.00 and the monthly dues at $1.25. The plaintiff made no application for membership in Local No. 56 and it was represented to him, at the time that he gave his check to Mr. Evans, that the amount of the check was to cover his reinstatement in Local No. 1, and that he was subject to the contract between his employer and Local No. 56 (which was not then in existence and was not executed until July 20, 1943), and in order to retain his employment he would have to be reinstated in the union. These representations were false in fact, and no copy of his employer's contract with the union being available, he was forced to rely upon the representations of the union's executive secretary as to the requirements of that contract.
I think it is evident from what happened subsequent to the delivery of the plaintiff's check to Mr. Evans, that Mr. Evans *Page 343 
planned to put the plaintiff in a position so that he would come under the provisions of his employer's contract with Local No. 56. It is clear that he was not subject to that contract at that time. It is also clear that Evans intended to bring the plaintiff into Local 56's fold whether he desired to join the Union or not. In no other way could he be subjected to the Union contract.
As already stated, plaintiff's check was drawn to the order of Local No. 1, of which he had previously been a member, but it never reached the coffers of that Local. It was endorsed by Frank A. Evans, individually, and by him cashed at the I.U.M.S.W.A. Federal Credit Union, and the cash proceeds were applied by Mr. Evans, according to the records of Local No. 56, to a reinstatement fee of $2.00 as of May 1, 1943, monthly dues of $1.25 and $.50 for Allied War Relief. This was without the knowledge or authority of the plaintiff who had not applied for either membership or reinstatement in Local No. 56, but only for reinstatement in Local No. 1. Thereafter plaintiff continued in his employment by the defendant Mathis Company without further incident until February 14, 1944, when he received a notice from Local No. 56 to the effect that he was in arrears for dues in that local in the amount of $14. On March 8, 1944, he received notice from the defendant Mathis Company that he was suspended for the period of 30 days for non-payment of dues from July, 1943 to March, 1944. The plaintiff then sought relief through the United States Employment Service, the C.I.O. office in Philadelphia, and the "Conciliator" in the War Manpower Commission in Philadelphia, but was told that the only relief he had was in the civil courts. In the meantime he had employed his present counsel. On April 7, 1944, he applied to the defendant Mathis Company for reinstatement in his employment and he was dismissed by a notice stating that "employment terminated by reason of suspension A/c. non-payment of Union dues."
The plaintiff received his membership and dues book in the Local No. 1 back from the office of Local No. 56, sometime in July, 1943, and when the book was returned, on the *Page 344 
inside of the front cover there was pasted a paper reading as follows:
"This is to Certify that the Bearer hereof Name Harry P. Cook 
is a member of Local No. 56 Signature _____________________________________ City Camden State N.J. 
Initiated Nov. 29, 1941 Book No. M-206 
Dept. M Initiation Fee 3.25 F.A. Evans Secretary"
The book also contained two monthly dues stamps showing payment of monthly dues on May 29, 1943 and also on July 7, 1943. Plaintiff denies having paid any dues to Local No. 56, and while the records of that local show the receipt of $1.75 on July 7, 1943 for one month's dues and Allied War Relief assessment, it is quite possible that someone else paid this money for his account without his knowledge, and in view of what happened to his check, drawn to the order of Local No. 1, I have no doubt but that he is telling the truth when he says he made no payment whatever to Local No. 56. His membership book in Local No. 1 was still in Mr. Evans' possession or under his control on July 7, 1943, and it is significant that no one testified to the actual receipt of the money for the July dues from the plaintiff. Incidentally, the certificate pasted on the inside of plaintiff's membership and dues book, indicating his membership in Local No. 56, also shows that he paid an initiation fee of $3.25, which it is admitted he did not pay. It is also contended that the plaintiff recognized his membership in Local No. 56 by attending a meeting of that local in January, 1944. His attendance is admitted, but it was satisfactorily explained. He did not attend as a member but as a spectator in company with another member, and apparently out of mere curiosity.
The fact is that the plaintiff was never a member of Local No. 56 and never sought membership in that local. What he did seek, under protest, was reinstatement in Local No. 1, but he was never reinstated in that local. I am convinced, therefore, that the defendant union practiced a *Page 345 
fraud on the plaintiff as a result of which he lost his employment with the defendant Mathis Company. It is clear that the plaintiff was never subject to the contract between that company and the defendant union. The defendant Mathis Company claims that in dismissing the plaintiff from its employ it acted in good faith. As a matter of fact, I think the Mathis Company was a willing dupe of the defendant union and preferred to submit to the intimidating threat of a strike of its union employees rather than attempt to enforce the rights of one of its non-union employees whose work was entirely satisfactory and had gained him merited promotions from his employer. This is plainly apparent from the plaintiff's conversations with Mr. Cale, Mr. Rockwell, Mr. Finney and others occupying positions of authority with the Mathis Company.
It is contended on behalf of the defendants that the issues here involved are now moot and perhaps, to a certain extent, those issues are more or less academic in view of the prayers of the complaint. However, I think the plaintiff is entitled to a judgment of this court determining his status and his right to work without unlawful interference by the defendants, and it is elementary that equitable relief, to which a suitor is entitled, is not necessarily restricted by the prayers of his complaint. Judgment will be entered for the plaintiff in accordance with these conclusions. As damages are not sought by the plaintiff in this action and as there is no evidence upon which such damages might be assessed, the plaintiff will be left to his legal remedy with respect to such damages, although had such relief been sought here and adequate proof of damages submitted, judgment therefor might well have been awarded. Fleming v. MovingPicture, c., Local No. 244, 16 N.J. Misc. R. 502, affirmed124 N.J. Eq. 269. It appears from undisputed testimony that since he was forced out of the Mathis Company employ he had repeatedly, up to the date of the final hearing, attempted to obtain employment at his trade in other shipyards in the Camden area but was unable to do so because of his unlawful dismissal from the Mathis Company and the Union control of such other shipyards. *Page 346 
The judgment to be entered herein will be without prejudice to the plaintiff's right to sue at law for such damages as he may be advised.